IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**RAY SCOTT HEID,** *et al.*,

       **Plaintiffs,**

                                     **Civil Action 2:18-cv-00311**
                                     **Judge Algenon L. Marbley**
       **v.**                            **Chief Magistrate Judge Elizabeth P. Deavers**


**GARY MOHR,** *et al.*,

       **Defendants.**


## REPORT AND RECOMMENDATION

      Plaintiffs, state inmates who are proceeding without the assistance of counsel, bring this

action under 42 U.S.C. § 1983. This matter is before the Court upon consideration of Defendants

Gary Mohr, Roger Wilson, Trevor Clark, Matt Gillum, Scott Gobels, Eric Graves, D.J. Norris,

and Jennifer Williams' Motion to Dismiss[1] (ECF No. 41) and Plaintiffs' Response in Opposition

---

[1] Defendant Ryan Dolan is not listed among the Defendants bringing the Motion to Dismiss
before the Court. Defendant Dolan is, however, represented by the same counsel from the
Ohio Attorney General's Office as all other Defendants. It is not clear, therefore, whether
omitting Defendant Dolan was intentional or erroneous. Defendants do indicate in their
Motion that Defendant Donna Skaggs is not included because she "has not yet been served in
this lawsuit." (ECF No. 41, at pg. 1 n.1.) Plaintiffs point out the omission of Defendant Dolan
in their Response in Opposition filed on February 1, 2019. (ECF No. 56, at pg. 2–3.) The
Defendants, however, failed to file a Reply. Furthermore, both Defendants Dolan and Skaggs
are completely omitted from the original Motion to Dismiss which Defendants filed on July 13,
2018, and again it is not clear whether this is intentional or erroneous. (ECF No. 21.) In
Plaintiffs' Response in Opposition, they point out that Defendant Dolan was not included in the
Motion to Dismiss. (ECF No. 26, at pg. 2–3.) Defendants again neglected to address
Defendants Dolan and Skaggs in their Reply, filed on August 16, 2018. (ECF No. 27.)
Accordingly, the Court must presume that the instant Motion to Dismiss does not apply to
Defendants Dolan or Skaggs. Orders addressing both Defendant Dolan and Defendant Skaggs
will be issued separately from the instant Report and Recommendation. Accordingly, the use

(ECF No. 56).  Defendants did not file a Reply.  For the following reasons, it is

**RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 41) be **GRANTED IN**

**PART** and **DENIED IN PART**.

## I. BACKGROUND OF THE INSTANT ACTION

Plaintiffs are inmates at Ohio correctional facilities.  Plaintiffs initiated this action by

filing a Complaint on April 9, 2018.  (ECF No. 1.)  Plaintiffs filed their First Amended

Complaint on June 15, 2018 (ECF No. 19) and their Second Amended Complaint on November

30, 2018 (ECF No. 37).  Plaintiffs bring civil rights claims under 42 U.S.C. § 1983.  Plaintiffs

identify as "Christian Separatists" and allege that Ohio prison officials are denying them access

to religious literature in violation of the First Amendment, Fourteenth Amendment, and the

Religious Land Use and Institutionalized Persons Act ("RLUIPA").  On December 14, 2018,

Defendants moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim.

(ECF No. 41.)  Plaintiffs filed their Response in Opposition on February 1, 2019.  (ECF No. 56.)

## II.  ADDITIONAL BACKGROUND

In 2009, Plaintiff Damron commenced a civil action in this Court against the then-Ohio

Department of Rehabilitation and Corrections ("ODRC") Religious Services Director in which,

amongst others, he advanced claims under the RLUIPA, 42 U.S.C. § 2000cc-1.  *Damron v.*

*Jackson*, No. 2:09-cv-050, 2011 WL 4402767 (S.D. Ohio Sept. 21, 2011).  In the 2009 action,

the Court entered summary judgment against all plaintiffs except Plaintiff Damron.  *Id.* (*see* ECF

No. 327.)  The Court eventually dismissed the case for mootness because Plaintiff Damron

---

of the term "Defendants" in the instant Report and Recommendation refers to Defendants Gary
Mohr, Roger Wilson, Trevor Clark, Matt Gillum, Scott Gobels, Eric Graves, D.J. Norris, and
Jennifer Williams.

acknowledged that he had received the materials at issue in the remaining claims of his lawsuit. *Id.* (*see* ECF No. 347.)

On August 26, 2015, Plaintiff Damron, Plaintiff Heid, and other plaintiffs commenced a civil action in this Court seeking to bring claims for violation of the Fourteenth Amendment, First Amendment, § 1985(3), and RLUIPA. *The Christian Separatist Church Society of Ohio; the Wife of Christ, Prosopopoeia et al. v. The Ohio Department of Rehab. & Corr. et al.*, No. 2:15-cv-2757 (S.D. Ohio) ("2757 action"). On May 5, 2016, upon adoption of an October 1, 2015 Report and Recommendation, the Court dismissed Plaintiff Damron's claims as barred by the doctrine of *res judicata* and otherwise found that the remaining plaintiffs, including Plaintiff Heid, could proceed under their First Amendment and RLUIPA claims. (May 5, 2016 Order, No. 2:15-cv-2757, ECF No. 12 at 7–8.) On March 17, 2017, upon adoption of a January 30, 2017 Report and Recommendation, the Court dismissed the remaining plaintiffs' claims under the First Amendment, leaving only the RLUIPA claim. (March 17, 2017 Order, No. 2:15-cv-2757, ECF No. 42.) On March 30, 2018, the Court granted Defendants' Motion for Summary Judgment. (March 30, 2018 Order, No. 2:15-cv-2757, ECF No. 110.) The Sixth Circuit Court of Appeals affirmed the decision of this Court on February 13, 2019. *The Christian Separatist Church Society of Ohio; the Wife of Christ, Prosopopoeia et al. v. The Ohio Department of Rehab. & Corr. et al.*, No. 18-3404.

Plaintiffs filed another action in 2017. In the 2017 case, plaintiffs brought claims identical to the ones brought in the 2009 action. (February 26, 2018 Order, No. 2:17-cv-337, ECF No. 16 at pg. 2.) The Court dismissed plaintiffs' claims for failure to assert any new material facts that would cure any weaknesses in their previous claims. (*Id.* at pg. 8–9.) An

appeal of the 2017 action is currently pending in the Sixth Circuit Court of Appeals. *Damron v. Dodrill, et al.*, No. 18-3281.

## II. STANDARD OF REVIEW

Defendants bring their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

#### A. Statute of Limitations

Defendants argue that the statute of limitations for a 42 U.S.C. § 1983 civil rights action arising in Ohio expired before Plaintiffs brought some of their instant claims, and therefore those claims must be dismissed. (ECF No. 41, at pg. 7–8.) "The statute of limitations applicable to claims arising under 42 U.S.C. § 1983 is the two-year statute of limitations[.]" *Wilder v. Collins*, No. 2:12-cv-0064, 2012 WL 786855, at *2 (S.D. Ohio March 9, 2012) (citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989)). "Although the date of accrual for a § 1983 claim is a matter of federal law, state tolling principles apply to determine the timelines of claims." *Id.* (quoting *Davis v. Clark County Bd. of Com'rs*, No. 2:12-cv-0064, 2010 WL 333651, at *12 (S.D. Ohio Jan. 21, 2010)). In general,

> equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citations omitted). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561. Additionally, "neither 'excusable neglect' nor ignorance of the law are sufficient to invoke equitable tolling." *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) ("It is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling"); *Harris v. Hutchinson*, 209 F.3d 325, 329–30 (4th Cir. 2000) (equitable tolling should apply only where petitioner is prevented from asserting his claim by wrongful conduct of the respondent or where extraordinary circumstances beyond the petitioner's control make it impossible to file the claim on time).

There are five factors to consider when determining the appropriateness of tolling a statute of limitations: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

*Davis*, 2010 WL 333651 at *12.

Here, Plaintiffs make the following allegation in their Complaint that any delay in filing their claims was not due to their own failure or negligence, but rather

is a result of a legal misrepresentation made by the Defendants. Plaintiffs were advised by Trevor Clark, Asst. Chief Counsel, Division of Legal Services, that these claims were to be added to case no. 2:15-CV-2757. Because of that misrepresentation, the Plaintiffs asserted their rights in the wrong forum(s) which caused the delay of the filing of this action. Plaintiffs attempted to amend these claims "2757" as well as making an attempt to supplement these claims in that case. Furthermore, after those attempts were denied, the Plaintiffs continued to pursue prosecution of these claims by filing an appeal, known as case no. 17-4213.

Reasonably relying on the Defendants' Legal Services Department, specifically Defendant Clark's misrepresentation, fraudulently concealed the fact that these claims were to be filed as a separate action. As a result, some of the claims of this Complaint are seemingly filed beyond the statute of limitations under 42 U.S.C. 1983's purview. Unquestionably, the Defendants' action has caused an issue of equitable estoppel, where not for the misrepresentation Plaintiffs' claims would have been filed in a timely and appropriate manner.

(ECF No. 37, at pg. 17–18.) Defendants response to this allegation in their Motion to Dismiss is simply that it would have been a conflict of interest for Defendant Clerk to provide plaintiffs with legal information if plaintiffs had a pending lawsuit against the ODRC and that "[s]uch accusations of misconduct are baseless[.]" (ECF No. 41, at pg. 8.) Defendants provide no support for this information. In any event, this argument goes to the merits of Plaintiffs' claims rather than the sufficiency of the pleadings.

There is support for Plaintiffs' contention that they made an attempt to supplement the claims in the 2757 action. In *The Christian Separatist Church Society of Ohio; the Wife of*

*Christ, Prosopopoeia et al. v. The Ohio Department of Rehab. & Corr. et al.*, No. 2:15-cv-2757

(S.D. Ohio), Plaintiffs Heid and Damron filed a Motion for Leave to File Supplemental

Complaint on March 8, 2017—within the two-year statute of limitations. (No. 2:15-cv-2757,

ECF No. 40.) The Supplemental Complaint, attached to Plaintiffs' Motion, is markedly similar

to the Complaint filed in the instant action. (No. 2:15-cv-2757, ECF No. 40-1; No. 2:18-cv-311,

ECF No. 1.) This Court has previously held that submission of a Motion for Leave to Amend

tolls the statute of limitations in § 1983 cases. *Estate of Bing v. City of Whitehall, Ohio*, 373 F.

Supp. 2d 770, 787–88 (S.D. Ohio June 22, 2005). The Court in *Estate of Bing* noted

> [a]s a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.

*Id.* (citing *Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993)). Here, Plaintiffs had

attempted to "supplement" their Complaint in the 2757 action with the claims at issue in the

above-captioned case. Furthermore, "[f]ederal courts have uniformly held that a claim set forth

in an amended pleading is timely under the applicable statute of limitations, if the motion for

leave to amend was filed before the statute of limitations had run." *U.S. v. Katz*, 494 F. Supp. 2d

641, 644 (S.D. Ohio March 27, 2006) (citations omitted). Though not identical to the situation in

*Estate of Bing*, the essence of not punishing a party when he or she attempts to properly file new

or amended claims, remains. Therefore, in the limited circumstances of this case, the

Undersigned recommends that Defendants' Motion to Dismiss be denied on statute of limitations

grounds.

### B. Eleventh Amendment

Defendants argue that Plaintiffs' official capacity claims against Defendants are barred by the Eleventh Amendment. A claim asserted against a state actor in his or her official capacity is really a claim against the state. *Rothhaupt v. Maiden*, 144 F. App'x 465, 471 (6th Cir. 2005) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. An official-capacity claim is not a claim against the official personally, for the real party in interest is the entity." (internal quotation marks and citations omitted)). The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

Accordingly, if Plaintiffs sought to assert claims for compensatory damages against Defendants in their official capacities, such claims would necessarily fail as barred by the Eleventh Amendment. As Plaintiffs point out, however, their Complaint explicitly states that they seek compensatory damages, nominal damages, and punitive damages from Defendants "*solely in their individual capacity*." (ECF No. 37, at pg. 23–24 (emphasis added).) The Eleventh Amendment does not bar a plaintiff's claims against defendants in their official capacity for injunctive relief or in their individual capacities. *Prim v. Jackson*, No. 2:14-cv-

1219, No. 2:14-cv-2159, 2015 WL 3544668, at *8 (S.D. Ohio June 4, 2015) (citing *Lawson v.*

*Shelby Cnty., TN*, 211 F.3d 331, 335 (6th Cir. 2002)).  Because Plaintiffs have only sued

Defendants in their individual capacities when they seek compensatory damages, nominal

damages, and punitive damages, the Undersigned recommends that Defendants' Motion to

Dismiss be denied as moot on Eleventh Amendment grounds.

### C.  *Respondeat Superior*

Defendants argue that Plaintiffs' claims against Defendant Mohr, Defendant Wilson, and

Defendant Clark must be dismissed because they fall under the doctrine of *respondeat superior*.

(ECF No. 41, at pg. 9–11.)  Defendants argue that Plaintiffs' allegations against Defendants

Mohr, Wilson, and Clark rely solely on their position as Director of ODRC, Chief Inspector for

ODRC, and attorney within ODRC, respectively.  (*Id.* at pg. 10–11.)

In order to plead a cause of action under § 1983, a plaintiff must plead two elements:

"(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by

a person acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542

F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th

Cir. 2006)).  To sufficiently plead the second element, a plaintiff must allege "personal

involvement."  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted).  Plaintiffs

must allege Defendants were personally involved because "§ 1983 liability cannot be imposed

under a theory of *respondeat superior*."  *Id*. (citation omitted).  Thus, to hold a supervisor liable

under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or

knowingly acquiesced in the unconstitutional conduct . . . ."  *Everson v. Leis*, 556 F.3d 484, 495

(6th Cir. 2009).

Plaintiffs make the following allegations in their Complaint regarding Defendant Mohr:

. . . ODRC Legal Service officials . . . while enforcing Director Gary Mohr's policy 210-SEC-12, ordered Chaplain Chris Markko to remove [Christian Separatist] literature entitled *Positive Christianity in the Third Reich*, *Was Adolf Hitler a Bible Christian?*, and *Christian Principles of National Socialism* from the Chapel library due to *objectionable* (Aryan-American culture) symbolism. (ECF No. 37, at pg. 7 (emphasis in original).)

Correction officers Paul Kirsch and Barry Tanner, while carrying out Director Gary Mohr's STG policy 310-SEC-12, confiscated the publications titled *Positive Christianity in the Third Reich* and *Mein Kampf* from Plaintiff Damron. Meanwhile John Doe Correction officer(s), acting under Director Mohr's STG policy, confiscated the political text titled *Mein Kampf* from Plaintiff Heid. In confiscating said texts, prison officials violated AR 5120-9-19(D), (E)&(F) and ODRC Policy 75-MAL-02(VI)(A)&(B). (*Id.* at pg. 9.)

On October 15, 2015 AD, a massive shakedown was conducted in House 7B. During which John Doe officer(s), while enforcing Director Mohr's STG policy, confiscated a birthday card from Plaintiff Heid's cell. (*Id.* at pg. 10.)

C.O. Ray Blair, while enforcing Director Mohr's STG policy, issued Heid a conduct report for a Rule 17 violation; alleging that the picture of Hitler and the use of the swastika was widely used by white supremacist groups, i.e., the depictions are illegal for Aryan-Americans to sue within ODRC per Director Mohr's STG policy. (*Id.* at pg. 10.)

Upon learning of the security level denial (a final, non-appealable decision), around October 6, 2016, Heid sent several kite communications to ascertain why the security level was not denied. Seemingly unjustifiable as he had not been before the RIB panel or placed in the hole since August of 2010 AD; over 7 years ago. Eventually it was discovered that the denial was based on the guilty finding of the Rule 17 ticket. A consequence of Director Mohr's STG policy. (*Id.* at pg. 11–12.)

The practice of ODRC policy 310-SEC-12 (security threat groups), enforced by Director Gary Mohr, targets Aryan-American inmates as security threats to the community. (*Id.* at pg. 12.)

On October 20, 2014 AD John Doe, STG Coordinator, acting under Director Mohr's STG policy, conducted an updated gang profile and affiliation review on Plaintiff Heid. (*Id.* at pg. 14.)

After Plaintiffs have personally informed Lt. Graves, Matt Gillum, D.J. Norris and Roger Wilson (who has an obligation to report to the Director) of the unconstitutional effect of Director Mohr's STG policy, STG officials continue to encourage/enforce unconstitutional practices against the Plaintiffs. (*Id.* at 15–16.)

Plaintiffs Heid and Damron once again, on 05-27-17 AD, attempted to correct the irresponsible application of STG procedures as applies to them by informing Lt. Graves and, through exhaustion, CI Roger Wilson (who has a duty to report to Director Gary Mohr) of the Constitutional violations the policy creates. (*Id.* at pg. 16.)

Director Gary C. Mohr, D.J. Norris, Matt Gillum, Lt. Eric Graves, through the practice of policy 310-SEC-12 have created a culture of customs to carry out ethnic cleansing. . . . This STG policy deems any expression of the Plaintiffs' ethos (Aryan ethnicity) illegal. (*Id.* at pg. 16.)

Contemporary ethical jurisprudence in America has changed societal sentiment regarding Aryan-Americans. Guised as popular justice, discriminatory practices toward Aryan-Americans is now common place in modern society. This sense of popular justice has now spilled over into the prison system. In light of this, Director Mohr and the aforementioned STG personnel are permitted to violate the Plaintiffs' Constitutional rights so long as officials make the broad, unsubstantiated claim that a security interest is involved. (*Id.* at pg. 17.)

(*see generally* ECF No. 37.) The crux of Plaintiffs allegations is that Defendant Mohr oversees the policy with which they take issue (i.e., 310-SEC-12). Plaintiffs, however, allege no facts about how Defendant Mohr specifically implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of which Plaintiffs complain. Accordingly, because *respondeat superior* is not available in actions under § 1983, the Undersigned recommends that Defendants' Motion to Dismiss be granted with respect to the claims against Defendant Mohr.

Plaintiffs make the following allegations in their Complaint regarding Defendant Wilson:

Plaintiffs thereafter followed the administrative grievance procedure and reported to Roger Wilson, CI, the Constitutional violations cased by the confiscation and exclusion of said publications. (ECF No. 37, at pg. 9.)

Prevented from providing actual evidence in his defense, Heid was found guilty of the Rule 17 violation. After being found guilty, Heid was advised no appeal right exists for a hearing officer ruling, as opposed to an RIB ruling. Nonetheless, Heid reported to Roger Wilson, CI, pursuant to AR 5120-9-31 introducing documents in defense of expressing his ethnicity. Mr. Wilson failed to ensure that Heid's Constitutional rights were protected, which encouraged his subordinates to continue to target the Plaintiff and Plaintiff's ethnicity for disciplinary action. (*Id.* at pg. 11.)

11

After Plaintiffs have personally informed Lt. Graves, Matt Gillum, D.J. Norris and Roger Wilson (who has an obligation to report to the Director) of the unconstitutional effect of Director Mohr's STG policy, STG officials continue to encourage/enforce unconstitutional practices against the Plaintiffs. (*Id.* at 15–16.)

Plaintiffs Heid and Damron once again, on 05-27-17 AD, attempted to correct the irresponsible application of STG procedures as applies to them by informing Lt. Graves and, through exhaustion, CI Roger Wilson (who has a duty to report to Director Gary Mohr) of the Constitutional violations the policy creates. (*Id.* at pg. 16.)

(*see generally* ECF No. 37.) Plaintiffs allege that Defendant Wilson had a duty to report to Defendant Mohr, but the Court cannot discern any specific allegations with respect to Defendant Wilson beyond this alleged duty. These allegations do not rise to the level of personal involvement necessary in order to state a claim under § 1983. *Grinter*, 523 F.3d at 575. Furthermore, no constitutional violation has occurred where an official has denied an administrative grievance and failed to remedy the alleged behavior or intervene on the prisoner's behalf. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act" such as a denial of administrative grievances) (internal quotations and citation omitted). Accordingly, because *respondeat superior* is not available in actions under § 1983, the Undersigned recommends that Defendants' Motion to Dismiss be granted with respect to the claims against Defendant Wilson.

In addition to the facts alleged in the Complaint regarding Defendant Clark previously discussed in the instant Report and Recommendation in the statute of limitations analysis, Plaintiffs make the following allegations:

Consequently, on or about 8-21-15 AD ODRC Legal Service officials Trevor Clark, Asst. Chief Counsel, and Ryan Dolan, Staff Counsel and Chairperson of the PSC, while enforcing Director Gary Mohr's policy 310-SEC-12, ordered Chaplain Chris Markko to remove [Christian Separatist] literature entitled *Positive Christianity in the Third Reich*, *Was Adolf Hitler a Bible Christian?*, and *Christian Principles of*

*National Socialism* from the Chapel library due to *objectionable* (Aryan-American culture) symbolism.  (ECF No. 37, at pg. 7 (emphasis in original).)

On 12-01-15 AD the PSC (T. Clark and R. Dolan) rendered a decision excluding both [Christian Separatist] publications titled *Positive Christianity in the Third Reich* and *Was Adolf Hitler a Bible Christian?* from within ODRC.  (*Id.* at pg. 7.)

Moreover, ODRC officials of the PSC failed to address why the other [Christian Separatist] publication, *Christian Principles of National Socialism*, was removed from the Chapel library.  As a result, T. Clark and R. Dolan's conduct shows that the publication was ordered removed because of its appeal to a specific ethnic group.  Effectively quelling and/or unduly burdening the Plaintiffs' ethno-religious expressions within ODRC.  (*Id.* at pg. 9.)

During this appeal process, on 12-04-15 AD, the PSC (T. Clark and R. Dolan) concluded on form DRC 4225 the exclusion of publications which depict the swastika from the Plaintiffs' possession.  (*Id.* at pg. 9.)

(*see generally* ECF No. 37.)  When construed in a light most favorable to Plaintiffs and taken as true, Plaintiffs' Complaint establishes that Defendant Clark at least implicitly authorized, approved, or knowingly acquiesced in confiscating literature and potentially other "religious" materials from Plaintiffs.  *See Love v. Franklin Cnty., Kentucky*, No. 3:18-cv-00023, 2019 WL 1387692, at *6 (E.D. Ky. March 27, 2019) (holding that because defendant saw prisoner was in labor and chose not to intervene, plaintiff established defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.").  Accordingly, the Undersigned recommends that Defendants' Motion to Dismiss be denied on a theory of *respondeat superior* with respect to Defendant Clark.

### D.  Qualified Immunity

Defendants argue that Plaintiffs claims as to Defendants in their individual capacities fail because Defendants are state officials and "there is no constitutionally protected right for Plaintiffs to 'separate' from others while practicing their religion in the prison context."  (ECF No. 41, at pg. 12.)  Defendants appear to have "copy and pasted" an argument from one of the

earlier cases involving Plaintiffs Heid and Damron, rather than focusing on the facts of the instant action. As Plaintiffs point out, the allegations in their Complaint include: "(1) the removal of religious publications from the Chapel; (2) the confiscation of religious and political publications from Plaintiffs' person, respectively; (3) the criminalization of Plaintiffs' ethnicity; (4) the criminalization of Plaintiffs' religious beliefs; (5) ethno-religious discrimination; and (6) the substantial burden placed on Plaintiffs' access to religious CDs." (ECF No. 37, at pg. 14.)

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"[Q]ualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation marks and citations omitted). The determination of whether a government official is entitled to qualified immunity is a two-part inquiry. *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010). "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (internal quotation marks and citations omitted). The Court need not consider these questions sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted). "Once it is determined that the right is clearly

14

established, the [C]ourt must determine 'whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what [the defendant] allegedly did was objectively unreasonable in light of [the] clearly established constitutional rights.'" *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996) (quoting *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994)).

Here, Defendants make no relevant argument related to the instant action regarding qualified immunity. It would be impermissible for the Court to make Defendants' argument for them. *Catepillar Financial Serv. Corp. v. Sunnytime Seeding & Landscaping, LLC*, No. 10-316, 2011 WL 4834242, at *2 (E.D. Ky. Oct. 12, 2011) ("It is utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion [on a party's behalf].") (internal quotations omitted) (citing *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992); *see also Fenwick v. Colvin*, No. 1:14-cv-2581, 2016 WL 726898, at *8 (N.D. Ohio Feb. 24, 2016) ("[T]he court will not substitute *sua sponte* its own arguments where none have been posed[.]"). Accordingly, the Undersigned recommends that Defendants' Motion to Dismiss be denied on qualified immunity grounds.

### E. Section 1983 Requirements

Defendants argue that the Plaintiffs fail to state a claim under § 1983 because the Plaintiffs fail to show the removed literature were religious texts. (ECF No. 41, at pg. 12–13.) 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

15

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom. Brandon v. Holt*, 469 U.S. 464 (1985).

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011). "Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted). The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs. *Id*. "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted). Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action "is valid if it is 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Plaintiffs allege that ODRC's policies regarding the subject literature violate their First

Amendment right to the free exercise of religion. The following is Defendants' entire argument

in their Motion to Dismiss regarding why the literature does not constitute religious texts:

> Plaintiffs' claims are partially dependent upon the removal of certain literature from
> [Ross Correctional Institution]. The books referenced are "Positive Christianity in
> the Third Reich", "Was Adolf Hitler a Bible Christian?", "Christian Principles of
> National Socialism", and "Mein Kampf: Ford Translation." While these books may
> have religious dialogue contained within them, they are not required for the practice
> of the Christian Separatist faith. "Mein Kampf" is Adolf Hitler's autobiography;
> not a religious text. "Positive Christianity in the Third Reich" is a 72 page pamphlet
> that is intended to clarify the Nazi party's stance on Christianity. This is not a
> religious text, but rather a discussion of how the Nazi party viewed Christianity.
> Neither of the two remaining books is considered religious text either. To the extent
> that Plaintiffs claims rest on the return of these four books to [Ross Correctional
> Institution], they fail to state a claim because the above-mentioned books are not
> religious texts. Accordingly, Plaintiffs do not have a constitutional right to view or
> possess them.

(ECF No. 41, at pg. 13.) Defendants do not include a citation to *any* authority in their argument.

Rather, the argument reads as though it is simply Defendants' opinion that the literature at issue

do not constitute religious texts. Plaintiffs' Response, on the other hand, includes citations to

caselaw and an explanation of why these texts are important to Christian Separatists.[2]

The Court discussed caselaw regarding whether Plaintiffs' beliefs constitute a religion in

its March 4, 2019 Order denying the Plaintiffs' Motion for a Preliminary Injunction and denying

the Plaintiffs' Motion for Recusal. (ECF No. 57.) As the Court explained,

> [m]ost courts to have addressed challenges brought by groups that hold racist
> beliefs have assumed without discussion that such groups hold beliefs which
> qualify as religious and are entitled to protection under the First Amendment,
> RLUIPA, or FRFA. *See, e.g.*, *Mann*, 2007 U.S. Dist. LEXIS 94002 (considering

---

[2] Plaintiffs sum up Defendants argument aptly: "[I]t is important to note that the Defendants
have not alleged how the exclusion of these publications are reasonably related to legitimate
penological interests or that Plaintiffs' beliefs are insincere. In fact, the Defendants['] sole
argument is to purport to be religious experts of the Christian Separatist faith . . . namely that
these publications are either not required for study or not religious in the scheme of Christian
Separatist religious exercise." (ECF No. 56, at pg. 16.)

an RLUIPA claim brought by members of the Christian Identity Church); *McCabe v. Arave*, 827 F.2d 634, 636–37 n.2 (9th Cir. 1987) (assuming that the Church Jesus Christ Christian, which includes "racial hatred, revenge and violence" and included the Aryan Nation as its "alter ego," was a religion for purposes of the First Amendment); *Murphy v. Missouri Dep't of Corrs.*, 814 F.2d 1252, 1255–56 (8th Cir. 1987) (finding that plaintiffs were not harmed when district court assumed without deciding that Church of Jesus Christ Christian was a religion). In some cases, the defendants did not challenge that the beliefs in question constituted a religion. *See Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006). Courts to have addressed the issue have been split on whether groups that espouse views similar to the views of the Christian Separatist Church are religions. The Tenth Circuit has found that "Creativity," which has as "one of [its] central tenets" the belief that "Good is personified by the White Race and the crusade for its future, while evil is personified by its antithesis in this world, the Jewish Race," is not a religion. *Hale*, 2016 WL 117616, at *1–5. But the Third Circuit has held that the Nation of Islam, whose "members want to establish a separate territory where black people can live independently and 'believe the offer of integration is hypocritical and is made by those who are trying to deceive the black peoples into believing that their 400-year-old enemies . . . are, all of a sudden, their 'friends,'" is entitled to First Amendment protection as having "views . . . sufficiently rooted in religion." *Sutton*, 323 F.3d at 252. The Eighth Circuit cast significant doubt on a district court's determination that the Church of Jesus Christ Christian was not a religion, finding that "the district court may have erred in its conclusion that the inmates' beliefs are purely secular" and that "the inmates' religion may be comprehensive and that it may address fundamental and ultimate questions." *Wiggins v. Sargent*, 753 F.2d 663, 666 (8th Cir. 1985). The Eighth Circuit remanded the case to the district court for further consideration. In addition to noting that RFRA, and therefore RLUIPA, required a claim based on "a religious belief rather than a philosophy or way of life," *General Conference Corp. of Seventh-Day Adventists*, 617 F.3d at 410, the Sixth Circuit has also opined that "a court's attempt to distinguish between what is or is not a religious belief might implicate the Establishment Clause." *New Doe Child #1 v. Congress of United States*, 891 F.3d 578, 588 n.4 (6th Cir. 2018) (citing *New York v. Cathedral Acad.*, 434 U.S. 125, 133 (1977)).

(ECF No. 57, at pg. 12–13.) Ultimately, the Court declined to determine whether Christian Separatism is a religion because it found that the Defendants had shown their decisions were the least restrictive means of furthering a compelling governmental interest. (*Id.* at pg. 13.) Here, Defendants simply argue that Plaintiffs are unable to state a claim under § 1983 because the removed literature is not religious. Defendants, however, fail to support their position. As noted above, it would be impermissible for the Court to make Defendants' argument for them.

*Catepillar*, 2011 WL 4834242 at \*2; *Fenwick*, 2016 WL 726898 at \*8. Accordingly, the

Undersigned recommends that Defendants' Motion to Dismiss be denied as to their assertion that

Plaintiffs have failed to state a claim under § 1983.

## IV. CONCLUSION

For the reasons stated above, the Undersigned **RECOMMENDS** that Defendants'

Motion to Dismiss (ECF No. 41) be **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be

**GRANTED** with respect to Defendant Mohr under a theory of *respondeat superior* and

Defendant Wilson under a theory of *respondeat superior*. The Undersigned **RECOMMENDS**

that Defendants' Motion to Dismiss be **DENIED** with respect to the statute of limitations,

Eleventh Amendment, qualified immunity, failure to state a claim under § 1983, and with respect

to Defendant Clark under a theory of *respondeat superior*.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).


**Date: June 17, 2019**                                    */s/ Elizabeth A. Preston Deavers*_____
                                                            **ELIZABETH A. PRESTON DEAVERS**
                                                            **CHIEF UNITED STATES MAGISTRATE JUDGE**