UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RAY SCOTT HEID,** *et al.*,

    **Plaintiff,**

                                                        Case No. 2:18-cv-00311
    v.                                      Chief Judge Algenon L. Marbley
                                                        Chief Magistrate Judge Elizabeth P. Deavers

**GARY MOHR,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of several pending motions. For the reasons that follow, Plaintiffs are **ADVISED** that they must each personally sign every document filed in this Court bearing their signatures and that the Court will strike any future filings that are applicable to this litigation unless both Plaintiffs have signed the document. Additionally, Plaintiffs' Motion for Definitive Statement (ECF No. 90) is **DENIED**, Plaintiffs' Motions to Preserve Evidence (ECF Nos. 96, 99) are **DENIED**, Defendants' Motion to Strike Declaration of Verity (ECF No. 100) is **DENIED**, Plaintiffs' Motion to Deem Matters Admitted (ECF No. 101) is **DENIED**, Plaintiffs' Motion to Correct Clerical Errors (ECF No. 112) is **DENIED**, Plaintiffs' Motion to take Judicial Notice (ECF No. 114) is **DENIED**, and Defendants' Motion to Stay Proceedings (ECF No. 120) is **DENIED AS MOOT**.

**I.    Plaintiffs' Notice of Filing of Declaration (ECF No. 108)**

On December 19, 2019, the Court granted Plaintiffs' Motion Requesting a Complete Docket. (ECF No. 105.) In its Order, the Court directed Plaintiff Ray Scott Heid to file a sworn affidavit or unsworn declaration under penalty of perjury in which he would aver that he

personally signed and executed the Motion Requesting a Complete Docket.  (*Id.*)  On January 8, 2020, Plaintiff Heid filed a Declaration stating, *inter alia*, that "[o]n 8-22-18 [] I personally gave one James E. Damron specific power of attorney to sign and file . . . documents in reference to [this case] on my behalf."  (ECF No. 108.)  Plaintiff Heid noted that he and Plaintiff Damron "avoid unilateral decisions by writing to one another to confer over legal objectives and strategies that achieve the most efficient means to those ends."  (*Id.*)  On January 14, 2020, Plaintiff Damron filed a notice requested the Court to take judicial notice of two attached "Specific Power of Attorney[s]" executed between Plaintiff Heid and him whereby each one acts as an "agent" to the other in civil proceedings.  (ECF No. 111.)  Plaintiff Damron noted that "Plaintiff Heid has explicit permission to act on my behalf in our civil proceedings, as do I on his behalf."  (*Id.*)

Upon request by the Court, Defendants responded to Plaintiff Heid's Declaration, asserting that the power of attorney "exchange" is both legally prohibited and factually deficient.  (ECF Nos. 110, 113.)  Defendants rely on 28 U.S.C. § 1654 and case law interpreting the same to assert that a party may appear personally or through counsel.  (ECF No. 113 at 1–3.)  Moreover, Defendants assert that the specific documents filed by Plaintiff Damron are factually deficient for two reasons.  (*Id.* at 2–3.)  First, the document purporting to appoint Plaintiff Damron as Plaintiff Heid's agent identifies specific cases but does not identify this particular case as one in which Damron may act as an agent.  (*Id.*; ECF No. 111 at 3.)  Second, Defendants maintain that such agency could not have been authorized for this particular case because the purported power of attorney document was executed on August 22, 2017, which precedes the filing of this case.  (*Id.*)

Plaintiffs contend that "[b]oth Plaintiffs have appeared personally and presented claims on their own behalves" and that "neither [Plaintiff] has acted on the power so authorized" in their power of attorney documents. (ECF No. 121 at 1–2.) But Plaintiffs maintain that their power of attorney documents do authorize each other sign documents that the other has read and consented to. (*Id.* at 2.) Attached to Plaintiffs' Reply is a declaration signed by Plaintiff Heid indicating that he has signed every document bearing his signature in this case. (*Id.* at 7–9.)

A party in federal court must proceed either through a licensed attorney or on their own behalf. 28 U.S.C. § 1654. The Sixth Circuit Court of Appeals held that an appeal was "without effect" and the court lacked jurisdiction where the notice of appeal was prepared and filed by a "non-attorney claiming authority to represent appellant by virtue of a grant of power of attorney." *J.M. Huber Corp. v. Roberts*, 869 F.2d 1491 (Table), 1989 WL 16866, at *1 (6th Cir. 1989). The court noted that 28 U.S.C. § 1654 "clearly makes no provision for a non-attorney's representation of others." *Id.*

The Sixth Circuit Court of Appeals has also held that "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional right of other prisoners." *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989)

In *Lester v. Michigan*, the United States District Court for the Western District of Michigan dismissed an action under 28 U.S.C. § 1983 finding, *inter alia*, as follows:

> A power of attorney does not authorize a non-lawyer to prosecute a case in federal court on behalf of another person. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (affirming dismissal of complaint with prejudice that was filed pursuant to a general power of attorney); *J.M. Huber Corp. v. Roberts*, No. 88-6160, 1989 WL 16866, at *1 (6th Cir. Feb. 17, 1989) (notice of appeal signed by a nonlawyer pursuant to a power of attorney ineffective to give rise to appellate

3

> jurisdiction); *Walsh v. Internal Revenue Serv.*, No. 1:08-cv-1132 (W.D. Mich. Oct. 12, 2009) (report and recommendation), *adopted by* 2009 WL 4261212 (W.D. Mich. Nov. 24, 2009); *Kapp v. Booker*, No. Civ. A. 05-402-JMH, 2006 WL 385306, at *3 (E.D. Ky. Feb.16, 2006).

*Lester v. Michigan*, No. 1:19-CV-354, 2019 WL 2442316, at *2 (W.D. Mich. June 12, 2019).

Here, Plaintiffs assert that their power of attorney documents are valid but also claim that they have not used the power vested under those documents. (ECF No. 121 at 1–2.) Specifically, Plaintiff Heid signed a sworn declaration stating that he has signed every document bearing his signature filed in this case, despite purportedly assigning agency to Damron under a power of attorney. (*Id.* at 5–9.)

A power of attorney document does not permit a non-attorney to represent a party in this court. 28 U.S.C. § 1654; *J.M. Huber Corp.,* 1989 WL 16866, at *1; *Newsom*, 888 F.2d at 381; *Lester*, 2019 WL 2442316, at *2. Accordingly, Plaintiffs purported power of attorney documents are invalid insofar as they provide for signing documents on the other's behalf. Plaintiffs are **ADVISED** that they are required to personally sign any document filed in this Court until or unless they are represented by counsel.

**II.     Motion for Definitive Statement by Plaintiffs (ECF No. 90)**

On August 28, 2019, Plaintiffs filed a Motion to Request a Definitive Statement from the Defendants and the Court, in which they request that both Defendants and the Court "make a definitive statement with regard to the following four (4) phrases: 1) White Separatism; 2) White Supremacy; 3) White Nationalism; and, 4) Security Threat Group ("STG," what constitutes one?)." (ECF No. 90.)

Plaintiffs did not submit a memorandum in support of this Motion. They have not supported their Motion with good cause or explained the authority under which they seek a response from the Court or from Defendants. No provision under the Federal Rules of Civil

4

Procedure authorizes a motion requesting either the Court or Defendants to submit to a party their understanding of the definitions of various words or phrases. And this Court is not inclined to succumb to Plaintiffs' demands for an advisory opinion. Accordingly, the Motion (ECF No. 90) is **DENIED**.

### III. Motions to Preserve Evidence by Plaintiffs (ECF Nos. 96, 99)

Plaintiffs each filed a Motion to Preserve Evidence. (ECF Nos. 96, 99.) Both Motions seek an order directing Defendants to preserve certain records "as may be maintained under ODRC's Record Retention Schedule." (*Id.*) Each Motion goes on to list certain categories of documents, including video footage and records pertaining to isolation placement, conduct reports, contraband tickets, and more. (*Id.*) Plaintiffs maintain that preservation is "necessary to substantiate legal claims . . . specifically actions which transpired after the filing of this lawsuit." (*Id.*) Defendants did not file a response to either Motion.

Generally, preservation orders are unnecessary because parties to civil litigation have "a duty to preserve relevant information . . . ." *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citations omitted); *accord Ferron v. EchoStar Satellite, LLC*, 410 F. App'x. 903, 911 (6th Cir. 2010). In *Goetz*, the United States Court of Appeals for the Sixth Circuit indicated that preservation orders should therefore "be employed in a very limited set of circumstances." *Id*. The *Goetz* Court also cite The Sedona Principles, which instruct that preservation orders "must be premised on a demonstration that a real danger of evidence destruction exists, a lack of any other available remedy, and a showing that the preservation order is an appropriate exercise of the court's discretion." *Id*. (citing The Sedona Principles, Second Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production at 33 (The Sedona Conference Working Group Series, 2007) *available at* https://thesedonaconference.org/download-pub/81).

Here, Plaintiffs have not established—or even alleged—that Defendants have not abided by their duty to preserve evidence in this case. The law already requires Defendants to preserve evidence relevant to this case, without the need for the Court's intervention. Therefore, Plaintiffs' Motions to Preserve Evidence (ECF Nos. 96, 99) are **DENIED**.

IV.     **Motion to Strike Declaration of Verity by Defendants (ECF No. 100)**

On December 2, 2019, Plaintiffs filed a Notice of Declaration of Verity of Ryan Hoffman who, like Plaintiffs, is a "Christian Separatist." (ECF No. 97.) On December 12, 2019, Defendants moved to strike the declaration under Fed. R. Civ. P. 12(f), asserting that it is improper and irrelevant. (ECF No. 100.) Defendants note that the declaration is neither signed nor dated, which invalidates it under 28 U.S.C. § 1746. (*Id.* at 2.) Defendants further note that the declaration was note filed in relation to any pleading and is irrelevant to the issues in the pending litigation. (*Id.*)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Defendants acknowledge that the Rule only applies to pleadings but cite a non-binding case where a court held that the Rule can occasionally be applied to other filings. (ECF No. 100 at 2, citing *Pigford v. Veneman*, 215 F.R.D. 2, 4 n.1 (D.D.C. 2203).)

This Court and others within the Circuit have previously held that Rule 12(f) is not a mechanism to strike affidavits or declarations. *See Hughes v. Lavender*, No. 2:10-CV-674, 2011 WL 2945843, at *4 (S.D. Ohio July 20, 2011) ("Notwithstanding the fact that some courts have used Rule 12(f) to strike affidavits or portions thereof, there is no basis in the rule for doing so."); *Weaver v. Ohio Dep't of Rehab. & Correction*, No. 1:17 CV 123, 2018 WL 4701599, at *2 (N.D. Ohio Sept. 24, 2018) ("It is clear that the Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.") (internal

quotation omitted); *Holder v. Powell*, No. 1:09-CV-625, 2011 WL 3567501, at *4 (S.D. Ohio July 1, 2011), *report and recommendation adopted*, No. C-1-09-625, 2011 WL 3566003 (S.D. Ohio Aug. 12, 2011) ("Defendant has not cited any authority that allows the Court to strike an improper declaration from the record, and the Court is not aware of any such authority."); *Portwood v. Montgomery Cty., Tenn.*, No. 3:13-CV-0186, 2014 WL 6871516, at *6 (M.D. Tenn. Dec. 5, 2014) ("Instead of striking evidence from the record, courts should simply disregard inadmissible evidence.")

Here, the Court agrees with Defendants that the declaration does not appear to be filed in support of any pleading or motion. However, striking the declaration under Rule 12(f) would be improper. The Court will instead disregard the filing at this time and will only consider the evidentiary value of the declaration if it is used in support of a pleading or motion by Plaintiffs. Accordingly, the Motion to Strike (ECF No. 100) is **DENIED**.

### V.     Motion to Deem Matters Admitted by Plaintiffs (ECF No. 101)

This matter is also before the Court for consideration of Plaintiffs' Motion to Deem Matters Admitted (ECF No. 101) and Defendants' Response in Opposition (ECF No. 109). Plaintiffs seek an order deeming certain requests for admission directed to Defendant D.J. Norris admitted because Plaintiffs assert Defendant Norris provided "inadequate responses." (ECF No. 101.) Defendants oppose the Motion, contending that the requests at issue are improper and that Defendant Norris responded to the questions in good faith, objecting where appropriate. (ECF No. 109 at 2.)

Federal Rule of Civil Procedure 36(a) provides in relevant part as follows:

(1) **Scope.**  A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

   (A) facts, the application of law to fact, or opinions about either; and

7

        (B) the genuineness of any described documents.

    (4) **Answer.** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(1), (4).

Plaintiffs contend that in response to nine specific discovery requests at issue, Defendant Norris answered that "he lacked sufficient knowledge or information to admit or deny the request but did not state that a reasonable inquiry was made and that the information Defendant knows or can readily obtain was insufficient to enable him to admit or deny the request." (ECF No. 101 at 2.) Plaintiffs further assert that "[u]nless the responding party states that it made a reasonable effort to ascertain the requested matters, the refusal to answer is not valid." (*Id*, citing Fed. R. Civ. P. 26(g)(1), 36(a)(4).)

Here, the nine requests for admission at issue ask Defendant Norris specific questions about the teachings of three different religious groups, whether certain aspects of those religions can be "seen as offensive," what protections those religious groups enjoy under the law, and the actions of other inmates. (ECF No. 101 at 7–12.) Defendant Norris objected to each of these requests on several bases and proceeded to deny each request with a short and plain statement. (*Id.*) The Court finds that these full and specific denials, despite the accompanying objections, are sufficient answers in compliance with Rule 36. *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.")

8

Next, Plaintiffs claim that five of the requests were not answered in good faith because Defendant Norris denied the requests based on institutional security and the safety of current and previous inmates. (ECF No. 101 at 2–3.) Each of these requests (Nos. 3, 5, 6, 16, 21) request information related to whether or not certain groups have been identified as security threats at the prison. (*Id.* at 7–12.) Defendant Norris objected to these requests because they seek privileged information that could threaten institutional security. (*Id.*) Defendant Norris also objected based on relevance and that some of the requests are compound and assume facts not in evidence. (*Id.*) Defendant Norris denied each request, noting that he "cannot respond to matters regarding STG groups because it is privileged and may threaten the safety of current or previous inmates" as well as "institutional security." (*Id.*) The Court finds that as to these requests, Defendant Norris' objections and responses are in compliance with Rule 36. *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.").

## VI. Motion to Correct Clerical Errors by Plaintiffs (ECF No. 112)

On January 22, 2020, Plaintiff Damron filed a Motion to Correct Clerical Errors. (ECF No. 112.)[1] Plaintiff first requests that the "Legal Notice That Christian Separatism Is A Legitimate Religion" be "put on the Court record for reference purposes and fact." (*Id.*) Plaintiff asserts that this Notice was filed on or about March 19, 2019, and he has attached it as "P1." However, no attachments to this Motion bear the title of said Notice and the Court is not aware of any Notice being filed on or about March 19, 2019.

---

[1] Notably, Plaintiff Heid did not sign this document. Plaintiffs are **ADVISED** that they both must personally sign each and every document related to this litigation if they intend for it to be effective as to each of them. In the future, the Court will strike any Motion, Notice or other paper that Plaintiffs intend to be applicable to both of them if only one has signed. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented.)

9

Plaintiff's second request is for the "Memorandum[s] In Support of Motion to Deem Admissions Admitted" as to Defendants Gillum and Norris to be filed separately on the docket so they "can be addressed on their own standing before the Court." (*Id.*) Again, Plaintiff asserts that said memoranda are attached to his Motion as "P2." The attached documents, however, are labeled "Personal A/C Withdrawal Check Out-Slip," not the memoranda themselves. (*Id.*) The Court presumes that Plaintiff is referring to the Motion to Deem Matters Admitted, which was filed on December 18, 2019. (ECF No. 101.) That Motion relates to requests for admission directed to Defendant D.J. Norris. (*Id.*) The filing does not reference discovery requests directed to Defendant Matt Gillum, and the Court has not received any motion related to any such discovery requests.

As explained above, because the Court is unable to discern the clerical errors Plaintiff Damron wishes to have corrected, the Motion (ECF No. 112) is **DENIED**.

### VII. Motion to Take Judicial Notice by Plaintiffs (ECF No. 114)

On February 13, 2020, Plaintiff Damron filed a Motion to Take Judicial Notice. (ECF No. 114.)[2] The Notice includes a 43-page "history of the swastika from Wikipedia" and requests that the Court take notice that "the swastika is a symbol with many styles and meanings and can be found in many cultures." (*Id.*) Plaintiff asserts that although other ethnicities and cultures have used the swastika for different purposes, "that should not be confused by the Court with how Plaintiffs and Christian Separatism distinctively use and interpret it." (*Id.*) Plaintiff Damron represents that he "personally hold[s] the sincere belief that Jesus Christ's sacrifice on the Cross of Calvary [is] symbolized by the swastika." (*Id.*)

---

[2] Again, Plaintiff Heid did not sign this document.

10

Under the Federal Rules of Evidence, a district court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Advisory Committee notes to Rule 201 state that "[a] high degree of indisputability is an essential prerequisite for a court to take judicial notice of a particular fact." *Koenig v. USA Hockey, Inc.*, No. 2:09-CV-1097, 2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010) (internal citation omitted).

Plaintiff requests that the Court take judicial notice of the entry for "swastika" on Wikipedia.com as of January 30, 2020. (ECF No. 114.) The United States Court of Federal Claims has considered the reliability and accuracy of information contained on Wikipedia and described it as "a website that allows virtually anyone to upload an article into what is essentially a free, online encyclopedia." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 781 (2006). The court continued its analysis of Wikipedia as follows:

> A review of the Wikipedia website reveals a pervasive and, for our purposes, disturbing series of disclaimers, among them, that: (i) any given Wikipedia article may be, at any given moment, in a bad state: for example it could be in the middle of a large edit or it could have been recently vandalized; (ii) Wikipedia articles are also subject to remarkable oversights and omissions; (iii) Wikipedia articles (or series of related articles) are liable to be incomplete in ways that would be less usual in a more tightly controlled reference work; (iv) another problem with a lot of content on Wikipedia is that many contributors do not cite their sources, something that makes it hard for the reader to judge the credibility of what is written; and (v) many articles commence their lives as partisan drafts and may be caught up in a heavily unbalanced viewpoint.

*Id.* (internal citations omitted).

Courts have repeatedly denied requests for judicial notice of information found on third-party websites, such as Wikipedia. *Koenig*, 2010 WL 4783042, at *2 ("Courts have also

11

expressed doubt about using Internet sources such as Wikipedia as authority for any proposition because of the opportunity for insertion of unreliable information into that website's content."); *Altman v. HO Sports Co., Inc.*, 821 F. Supp. 2d 1178, 1181 n.2 (E.D. Cal. 2011) (sustaining objections on the basis that Wikipedia is not an adequate source for purposes of judicial notice); *BP Products North America, Inc. v. United States*, 2010 WL 2180351, at *3 n.10 (Ct. of Int'l Trade June 1, 2010) ("Based on the ability of any user to alter Wikipedia, the court is skeptical of it as a consistently reliable source of information. At this time, therefore, the court does not accept Wikipedia for the purpose of judicial notice"); *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 361 (9th Cir. 2016) (finding that statements on a Wikipedia page are not proper subjects for judicial notice); *Galvani v. Tokio Marine & Nichido Fire Ins. Co.*, No. C 11-3848 PJH, 2012 WL 2568220, at *6 (N.D. Cal. July 2, 2012), *aff'd*, 544 F. App'x 791 (9th Cir. 2013) (denying a request for the court to take judicial notice as to a Wikipedia article); *Stein v. Bennett*, No. 2:12-CV-42-WKW, 2013 WL 12080962, at *6 (M.D. Ala. Sept. 5, 2013), *aff'd sub nom. Stein v. Alabama Sec'y of State*, 774 F.3d 689 (11th Cir. 2014) ("Wikipedia is not a source that warrants judicial notice.").

The Wikipedia entry for "swastika" is an inappropriate source for judicial notice under Federal Rule of Evidence 201(b). The entry is subject to reasonable dispute and its accuracy can reasonably be questioned, as described above. Accordingly, Plaintiff's Motion to Take Judicial Notice (ECF No. 114) is **DENIED**.

### VIII. Motion to Stay Proceedings by Defendants (ECF No. 120)

Finally, this matter is before the Court for consideration of Defendants' Motion to Stay Proceedings. (ECF No. 120.) Defendants seek a stay of discovery until Plaintiffs' appeal to the Sixth Circuit is resolved and until this Court issues a scheduling order determining the time limit for discovery. (*Id.*) Plaintiffs oppose the Motion. (ECF Nos. 123, 126.)

On March 31, 2020, the United States Court of Appeals for the Sixth Circuit affirmed this Court's denial of Plaintiffs' motion for a temporary restraining order and a preliminary injunction and Plaintiffs' motion for recusal of the district court judge. (ECF No. 127.) Accordingly, to the extent that Defendants seek to stay discovery in this case pending an appellate decision, the Motion is **DENIED AS MOOT**.

The Court will separately issue a Scheduling Order. Given the apparent voluminous amounts of discovery that has taken place in this case, particularly issued by Plaintiffs, the parties should anticipate an abbreviated period of discovery.

## IX. Conclusion

For the foregoing reasons, Plaintiffs are **ADVISED** that they must each personally sign every document filed in this Court bearing their signatures and that the Court will strike any future filings that are applicable to this litigation unless both Plaintiffs have signed the document. Plaintiffs' Motion for Definitive Statement (ECF No. 90) is **DENIED**, Plaintiffs' Motions to Preserve Evidence (ECF Nos. 96, 99) are **DENIED**, Defendants' Motion to Strike Declaration of Verity (ECF No. 100) is **DENIED**, Plaintiffs' Motion to Deem Matters Admitted (ECF No. 101) is **DENIED**, Plaintiffs' Motion to Correct Clerical Errors (ECF No. 112) is **DENIED**, Plaintiffs' Motion to take Judicial Notice (ECF No. 114) is **DENIED**, and Defendants' Motion to Stay Proceedings (ECF No. 120) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**Date:  May 28, 2020**                  /s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**