IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RAY SCOTT HEID,** *et al.***,**

      **Plaintiff,**

               **v.**

**Case No. 2:18-cv-311**
**Chief Judge Algenon L. Marbley**
**Magistrate Judge Elizabeth P. Deavers**

**GARY MOHR,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion by Leave of Court to Compel Defendants to Provide Adequate Responses to Discovery Request (ECF No. 184 (the "Second Motion to Compel")) and the Motion by Leave of Court to Supplement Plaintiffs' Motion to Compel Defendants to Provide Adequate Responses to Discovery Request (ECF No. 216 (the "Third Motion to Compel")).  For the reasons stated herein, the Second Motion to Compel (ECF No. 184) is **GRANTED IN PART** and **DENIED IN PART** and the Third Motion to Compel (ECF No. 216) is **GRANTED IN PART** and **DENIED IN PART**.

## I.

This case has been pending for nearly four years, and is one of several cases Plaintiffs have filed in this Court over the past thirteen years.  *See Heid, et al. v. Aderholt, et al.*, Case No. 2:20-cv-901, ECF No. 62 at PAGEID ## 710-711 (summarizing Plaintiffs' history of litigation). Here, Plaintiffs filed their Complaint on April 9, 2018, and soon thereafter filed an Amended Complaint on June 15, 2018.  (ECF Nos. 1, 19.)  On November 30, 2018, the Court permitted Plaintiffs to file a Second Amended Complaint, which to date serves as the operative Complaint.

(ECF No. 37.)  On December 11, 2018, Plaintiffs filed an Application for Injunctive Relief and Temporary Restraining Order.  (ECF No. 38.)  The Court denied Plaintiffs' Motion for Temporary Restraining Order on December 18, 2018.  (ECF No. 42.)  The Court held a two-day preliminary injunction hearing on January 11, 2019 and January 14, 2019.  (ECF Nos. 58, 59.) During the hearing, Plaintiffs presented arguments, answered direct questioning from the Court, answered cross-examination from Defendants' counsel, and conducted extensive cross-examination of certain Defendants and various witnesses.  (*Id.*)  On March 4, 2019, the Court denied Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 57.)

Beginning in January 2020, Plaintiffs started serving various discovery requests upon Defendants.  (*See* ECF No. 160 at PAGEID # 2483.)  The parties met and conferred regarding those discovery requests throughout the first half of 2020.  (*Id.*)  On May 29, 2020, the Court ordered that discovery must be completed on or before July 30, 2020, but noted that "[i]f Defendants need additional time to complete discovery, the Court will entertain a motion for extension of time."  (ECF No. 130.)  On July 28, 2020, the Court granted an extension of the discovery deadline until October 31, 2020.  (ECF No. 135.)  Then, in August 2020, the parties filed a number of discovery-related motions, including a motion for protective order (by Defendants), a motion to compel (by Plaintiffs), and a proposed deposition protocol (by Plaintiffs).  (ECF Nos. 138, 140, 141.)  The parties then briefed these issues (and others) throughout the second half of 2020.  (ECF Nos. 143-145, 151-152, 154, 156.)  On October 29, 2020, the Court extended the discovery deadline until December 30, 2020.  (ECF No. 155.) Then, on November 25, 2020, the Court ordered that it would "first resolve the pending discovery motions, and then will permit additional discovery if appropriate."  (ECF No. 158.)

On March 31, 2021, the Court issued an Opinion and Order on the discovery-related filings.  (ECF No. 160.)  Of note, the Court found that many of Plaintiffs' discovery requests were impermissible, as they were:  (a) "personal questions that are unrelated to Defendants['] positions as Ohio Department of Rehabilitation and Correction ("ODRC") employees but rather seek their personal opinions and perspectives" (hereafter, "Personal Belief Requests"); (b) "generalized in a manner such that it is impossible to either admit or deny" or "do not have a definitive answer and the varying responses are heavily context dependent" (hereafter, "Generalized or Hypothetical Requests"); or (c) sought confidential or irrelevant information, including but not limited to information that "is vital to the institutional security of all ODRC facilities and their operations"  (hereafter, "Miscellaneous Requests").

The Court granted Defendants' Motion for Protective Order and ordered that "discovery is limited to matters directly related to Plaintiffs' claims regarding the alleged withholding of purported religious materials, any alleged discrimination based on ODRC policies and regulations, and the specific actions performed by Defendants related to the allegations contained in Plaintiffs' complaint."  (*Id.* at PAGEID # 2503.)  The Court also found, however, that Defendants inexplicably failed to respond to Plaintiffs' remaining discovery requests, so the Court granted Plaintiffs' motion to compel in part and ordered Defendants to respond.  (*Id.* at PAGEID ## 2499-2502.)

On June 28, 2021, Plaintiffs filed the (132-page) Second Motion to Compel, challenging Defendants' responses to approximately 201 discovery requests.  (ECF No. 184.)  On July 21, 2021, Defendants responded to the Second Motion to Compel, but only responded to the first 44 pages, leaving the last 88 pages of the Second Motion to Compel without any opposition.  (ECF No. 192.)  Accordingly, on October 18, 2021, the Court directed Defendants to respond to the

last 88 pages of the Second Motion to Compel. (ECF No. 209.) On October 20, 2021, Defendants filed a supplemental response to the last 88 pages of the Second Motion to Compel.[1] (ECF No. 211.) Then, on December 1, 2021, Plaintiffs filed the (86-page) Third Motion to Compel, challenging Defendants' responses to approximately 135 discovery requests. (ECF No. 216.)

The Second Motion to Compel and Third Motion to Compel, which together constitute 218 pages and address approximately 336 discovery requests, are both fully briefed and ripe for judicial review. (ECF Nos. 184, 192, 208, 211, 216-218.) The Court will discuss each of the motions in turn.

---

[1] The Court notes that Defendants' supplemental response to the last 88 pages of the Second Motion to Compel, which was prepared and filed in only two days, provides no guideposts to help orient a reader, and is instead a twenty (20) page list of responses, leaving it up to the Court to figure out which responses correspond to which requests. (ECF No. 211 at PAGEID ## 3093-3112.) The Court is underwhelmed by Defendants' unhelpful approach to their supplemental response – which they were not entitled to file without the Court's order directing them to do so – especially given the Court's prior comments regarding Defendants' consistently insouciant behavior throughout discovery in this case. This reaction is only heightened by the fact that Defendants filed their supplemental response twelve (12) days before the Court-ordered deadline, which suggests to the Court that Defendants had ample time to draft their supplemental response in a more thoughtful manner, but they chose not to, prioritizing expediency over regard for the Court's time and resources.

Also, upon closer review, the Court notes Defendants' near-universal disregard for Local Rule 26.1, which states in relevant part that "[p]arties responding or objecting to discovery requests shall quote each such interrogatory or request in full immediately preceding the statement of any answer, response, or objection thereto." S.D. Ohio Civ. R. 26.1(a). The Court is mindful of the burden that this litigation imposes on Defendants and the oppressive discovery it has occasioned. But, that does not excuse Defendants from participating in the discovery process in compliance with the applicable rules. To this end, Plaintiffs seek sanctions associated with the subject briefing. (*See* ECF Nos. 184, 216.) The Court finds that Defendants' actions do not rise to that extreme level at this juncture, but the Court nevertheless **ADMONISHES** Defendants that any further incumbrance of the discovery process may result in sanctions.

4

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests.  Fed. R. Civ. P. 37(a)(1). Here, the Court is satisfied that this prerequisite has been satisfied, as Plaintiffs have attached correspondence demonstrating their efforts to resolve the discovery disputes in lieu of the subject briefing.  (*See* ECF No. 184-6 at PAGEID ## 2860-2871.)

Determining the scope of discovery is within the Court's discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  Unless the court orders otherwise, the scope of discovery is that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The Court can, and indeed must, limit the frequency or extent of discovery "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *Planned Parenthood Sw. Ohio Region v. Hodges*, No. 1:15-CV-00568, 2019 WL 13044827, at *2 (S.D. Ohio Mar. 31, 2019) (citing Fed. R. Civ. P. 26(b)(2)(C)).  The Court also has discretion to limit the scope of discovery by issuing protective orders, for good cause shown, forbidding the requested discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

Under Federal Rule of Civil Procedure 36(a)(6), the requesting party may challenge the sufficiency of an answer or objection to a request for admission. Under the Rule, "[u]nless the court finds an objection justified, it must order that an answer be served," and "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6). The requesting party bears the burden of demonstrating that the responding party's answers or objections were insufficient. *See Snyder v. Fleetwood RV, Inc.*, No. 2:13-CV-1019, 2016 WL 339972, at *7 (S.D. Ohio Jan. 28, 2016).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the

litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel.*
*Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R.
Civ. P. 26(b)(2)(C)(iii)).  This Court has previously held that "[t]hese factors are retained in
revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of
discovery'" because "'restoring proportionality' is the touchstone of revised Rule 26(b)(1)'s
scope of discovery provisions."  *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P.
26(b)(1)).   In analyzing the extent of the burden on the producing party, the Court of Appeals for
the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance
'would prove *unduly* burdensome,' not merely expensive or time-consuming."  *Id.* (citing *Surles*,
575 F.3d at 305) (emphasis in original).

**III.**

Applying the foregoing authority, the Court now considers in turn the pending motions,
which as discussed above implicate approximately 336 discovery requests.  As a preliminary
matter, the Court notes that an overwhelming majority of the discovery requests at issue are
plainly inappropriate or beyond the scope of permissible discovery which the Court previously
set forth in its March 31, 2021 Opinion and Order:

> [D]iscovery is limited to matters directly related to Plaintiffs' claims regarding the
> alleged withholding of purported religious materials, any alleged discrimination
> based on ODRC policies and regulations, and the specific actions performed by
> Defendants related to the allegations contained in Plaintiffs' complaint.

(ECF No. 160 at PAGEID # 2503.)  Many discovery requests also improperly seek duplicative
evidence that was produced and discussed at great length during the two-day preliminary
injunction hearing.  Accordingly, it is neither practical nor necessary for the Court to discuss
each of the 336 discovery requests at issue.  While the Court will discuss all of Plaintiffs'
discovery requests in general terms, the Court will only address individual requests as necessary.

7

**A.      Second Motion to Compel (ECF No. 184)**

**1.      Defendant Norris' responses to Plaintiffs' interrogatories**

The first subject of Plaintiffs' Second Motion to Compel is Defendant Norris, as
Plaintiffs argue that Defendant Norris improperly answered seventeen (17) interrogatories.  (ECF
No. 184 at PAGEID ## 2603-2618.)  Generally speaking, the interrogatories at issue seek
information related to the ODRC's STG department; the religious and gang affiliations of
inmates; "religious volunteer visitors" in ODRC institutions; and the incendiary nature of
swastikas.  (*Id.*; *see also* ECF No. 184-3 at PAGEID ## 2743-2747.)  Defendant Norris
responded with various boilerplate objections, including that the requests were "[v]ague,
ambiguous, unlimited in time, scope or subject, overly broad, unduly burdensome, oppressive,
and call[] for unbounded discovery," but also answered every single request over his objections.
(*See* ECF No. 184-3 at PAGEID ## 2743-2747.)

The Court finds Defendant Norris' responses to the subject interrogatories to be
sufficient, and his objections appropriate.  First, the Court agrees with Defendant Norris that
most of Plaintiffs' interrogatories were inappropriately vague and overly broad, and also agrees
with Defendant Norris that many interrogatories seek information beyond Defendant Norris'
professional background and experience and beyond the scope of discovery set forth in the
Court's prior decision.  (ECF No. 160 at PAGEID # 2503.)  To this end, the Court rejects
Plaintiffs' argument (echoed dozens of times throughout the subject briefing) that Defendants,
simply due to their status as ODRC employees, are required to produce information that is within
the ODRC's control pursuant to Federal Rule of Civil Procedure 33(b)(1).  (*See, e.g.,* ECF No.
184 at PAGEID ## 2606-2607 ("Defendant is required by law to furnish the information
available from sources under the [ODRC's] control . . . Defendant could have contacted the
ODRC's department of Mental Health and requested the information from any of the numerous

8

psychiatrists/psychologists employed by the ODRC."), PAGEID # 2608 ("Defendant could have contacted the ODRC's interdepartmental Religious Services office and spoke to the Religious Service Administrator, Mike Davis, to obtain the information.").)

Such arguments are not well taken, because the ODRC is not a named Defendant in this action, and Plaintiffs have not served any discovery requests on the ODRC. Under Rule 33(b)(1), interrogatories must be answered "by the party to whom they are directed" or "if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1). Here, the named Defendants are all individuals. The Court, therefore, rejects Plaintiffs' arguments that Defendants are "required by law to furnish the information available from sources under the [ODRC's] control." (ECF No. 184 at PAGEID # 2606.) The ODRC is not the party to whom the discovery requests are directed; Defendants do not have any duty to produce discovery beyond that which is within their own individual custody or control.[2] This is especially true here, where Plaintiffs affirmatively acknowledge that they knew how to seek such information for themselves, and from whom, but they chose not to use the discovery tools

---

[2] The Court notes that in the two cases upon which Plaintiffs relied in support of their argument, the parties responding to discovery were an association and a corporation, and were therefore subject to Rule 33(b)(1)(B). *See Int'l Assoc. of Machinists, Dist. 169 v. Amana Refrigeration, Inc.*, 90 F.R.D. 1, 2 (E.D. Tenn. Sept. 29, 1978) ("Rule 33(a), Federal Rules of Civil Procedure, requires the plaintiff, **as an " * * * association**, * * * " to answer " * * * by any officer or agent, who shall furnish such information as is available to the party (i. e., to the labor organization). * * * ") (emphasis added); *Firemen's Mut. Ins. Co. v. Erie-Lackawanna R. Co.*, 35 F.R.D. 297, 299 (N.D. Ohio 1964) ("**Plaintiff is here standing in the shoes of the F. E. Myers & Bros. Company** and will require the testimony of its insured-assignor in order to prove its claim. It is this Court's opinion that under such circumstances plaintiff is obliged to secure such information from its assignor as it can, in order to make response to defendant's interrogatories.") (emphasis added). Here, by contrast, the individual Defendants to whom discovery was served are only subject to Rule 33(b)(1)(A). *Doe v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:20-CV-01023, 2021 WL 5882653, at *4 (M.D. Tenn. Dec. 13, 2021) ("Rule 33(b)(1)(B) extends only to corporate or governmental defendants, not to individuals.").

available to them to do so.  Plaintiffs instead ask the Court to compel Defendants to dig up such information for them, but the Court will not countenance Plaintiffs' strategic use of interrogatories to this end.  Simply put, Plaintiffs are not permitted to force Defendants to conduct fishing expeditions (on Plaintiffs' behalf) into every nook and cranny of the ODRC.

The Court also has no patience for Plaintiffs' transparent effort to relitigate the preliminary injunction hearing from January 2019.  To this end, the Court agrees with Defendants that "Plaintiffs already had more than an adequate opportunity to conduct discovery at the January 11, 2019 and January 14, 2019 preliminary injunction hearing of this matter during which they exhaustively questioned Defendants Gillum and Graves, along with other prison officials, about the limited issues remaining in this case[.]"  (ECF No. 192 at PAGEID # 2928.)  Specifically, the transcript from the two-day preliminary injunction hearing (which totals more than 300 pages) confirms that Plaintiffs elicited testimony regarding, and extensively discussed, the "incendiary" nature of the swastika, its use by (and, accordingly, association with) white supremacists in the prison context, and the context-specific nature of symbols that may be considered security threats by the ODRC.  (*See* ECF Nos. 58, 59.)

Against that backdrop, Plaintiffs nevertheless asked Defendant Norris to "identify the reasons" why "all the books in ODRC libraries . . . with the swastika symbol on their front covers" are not considered security threats.  (*See* ECF No. 184-3 at PAGEID # 2747.)  In response, Defendant Norris properly objected to Plaintiffs' request, and nevertheless responded that books permitted by the ODRC "neither espouse, endorse, support, promote, nor advocate white supremacy, white separatism, and/or Nazi beliefs."  (*Id.*)  Defendant Norris' answers to these interrogatories are entirely consistent with the evidence from the preliminary injunction hearing.  Accordingly, the Court will not entertain Plaintiffs' attempts to compel further

duplicative responses.  For these reasons, having considered all of the interrogatories at issue, the Court finds that the requests are outside the scope of discovery for this case, duplicative, and only serve to harass Defendant Norris.  Accordingly, the Second Motion to Compel (ECF No. 184) is **DENIED** as to Defendant Norris' responses to Plaintiffs' Interrogatories.

### 2. Defendant Graves' response to Plaintiffs' request for admissions

Plaintiffs next challenge Defendant Graves' response to a request for admission that reads as follows:  "You oppose Christianity."  (ECF No. 184 at PAGEID # 2618.)  This is obviously an impermissible Personal Belief Request, which this Court already has already found is irrelevant to Plaintiffs' claims and only serves to harass Defendant Graves.  (*See* ECF No. 160 at PAGEID # 2490.)  Accordingly, the Second Motion to Compel (ECF No. 184) is **DENIED** as to Defendant Graves' response to Plaintiffs' Request for Admissions, Request No. 6.

### 3. Defendants Gobel, Gillum, Norris, Clark, and Dolan's responses to Plaintiff's requests for admissions

Next, Plaintiffs argue that Defendants Gobel, Gillum, Norris, Clark, and Dolan provided "evasive" and "insufficient" responses to approximately one hundred and seven (107) requests for admissions.  (ECF No. 184 at PAGEID ## 2619-2677.)  The Court will analyze the requests to Defendant Gobel first, and then will discuss the remaining requests together, as they all suffer from the same deficiencies.

Generally speaking, Plaintiffs' requests for admissions to Defendant Gobel seek:  (i) admissions related to the ODRC conduct report protocol as applied to Plaintiffs in October 2015, (ii) legal interpretations of ODRC policies, and (iii) Defendant Gobel's personal beliefs regarding how the ODRC views "the Aryan ethnicity," what symbols are, and regarding how the ODRC views "racially conscious white inmates."  (*Id.* at PAGEID ## 2619-2615.)  These requests are improper, however, as they do not serve the purpose of Federal Rule of Civil

11

Procedure 36.  *See Hendricks v. Ohio Dep't of Rehab. & Corr.*, No. 2:11-CV-40, 2012 WL 2075317, at *5 (S.D. Ohio June 8, 2012) ("Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.") (quoting *Misco, Inc. v. United States Steel Corp.,* 784 F.2d 198, 205 (6th Cir. 1986)); *Cogent Sols. Grp., LLC v. Brown*, No. 2:12-CV-665, 2013 WL 12121522, at *3 (S.D. Ohio Mar. 4, 2013) ("Requests for admissions . . . differ from other discovery tools contemplated under the Federal Rules of Civil Procedure.  Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.") (internal quotation marks and citations omitted).  These requests also are beyond the scope of discovery set forth in the Court's prior decision.  (ECF No. 160 at PAGEID # 2503.)

While certain of Plaintiffs' requests qualify as Personal Belief Requests or Legal Conclusion Requests which are plainly outside the realm of permissible discovery, Plaintiffs' remaining requests are conspicuously crafted for purposes of discovery rather than to eliminate the necessity of proving facts that are not in substantial dispute.  Such requests are improper. *Cogent Sols. Grp., LLC*, 2013 WL 12121522, at *3 ("Courts in this Circuit have also found that '[a]dmissions sought under Rule 36 should not be of such great number and broad scope as to cover all the issues of a complex case.' Nor are they an appropriate means by which to seek admissions of legal conclusion or opinion.") (quoting *Lantz v. N.Y. Cent. R.R. Co.*, 37 F.R.D. 69, 69 (N.D. Ohio 1963)); s*ee also Hendricks*, 2012 WL 2075317, at *5 (denying a motion to compel regarding a request for admission that "does not comply with Federal Rule of Civil Procedure 36(a) and more closely resembles an attempt to utilize Rule 36 as a general discovery device."); *Quicken Loans v. Jolly*, No. 2:07-cv-13143, 2007 WL 3408551, at *1-2 (E.D. Mich.

Nov. 15, 2007) ("[R]equests for admissions as to central facts in dispute are beyond the proper

scope of the rule. Such requests have consistently been held improper.") (quoting *Pickens v.*

*Equitable Life Assurance Soc.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (collecting cases)).

   The Court finds the same problems with the requests for admissions directed to

Defendants Gillum, Norris, Clark, and Dolan.  (*See* ECF No. 184 at PAGEID ## 2625-2677.)

These other requests for admissions are also well outside the bounds of Rule 36, as Plaintiffs

continued to assert Personal Belief Requests,[3] Generalized or Hypothetical Requests,[4] and Legal

Conclusion Requests[5] that serve no purpose other than to harass Defendants.  Many of Plaintiffs'

other requests also plainly appear to be crafted to relitigate the preliminary injunction from

January 2019, which as discussed above is inappropriate insofar as Plaintiffs seek to relitigate the

"incendiary" nature of the swastika, its use by (and, accordingly, association with) white

supremacists in the prison context, and the context-specific nature of symbols that may be

---

[3] For example, Plaintiffs asked Defendant Gillum to admit that "[y]ou believe that White people who desire to remain racially pure are white supremacists or otherwise STG affiliates," Defendant Norris to admit that "[i]t is your opinion that the Swastika has an appeal to Aryan-Americans," Defendant Clark to admit that "[a]n opinion that advocates violence is not the same as steeling a person to act out violence," and Defendant Dolan to admit that "American was founded by and intended to be a nation for White people."  (*See, e.g.,* ECF Nos. 184, 184-1 at PAGEID ## 2633, 2639, 2651, 2277.)  The Court notes that this list of examples is ***not*** exhaustive, as many of Plaintiffs' requests constituted improper Personal Belief Requests.

[4] For example, Plaintiffs asked Defendant Gillum to admit that "[t]he Rastafarian religion appeals to black people," Defendant Norris to admit that "[t]oday people recognize many different forms of Christianity," Defendant Clark to admit that "[s]ymbols that are considered STG identifiers are so labelled because they pose a risk to the safety and security of the institution(s)," and Defendant Dolan to admit that "[t]he publication Mein Kampf has incited others to cause violence within ODRC."  (*See, e.g.*, ECF Nos. 184, 184-1 at PAGEID ## 2628, 2634, 2653, 2658.)  The Court again notes that this list of examples is ***not*** exhaustive.

[5] For example, Plaintiffs asked Defendant Clark to admit that "the STG procedure governed by policy 310-SEC-12 [can] be arbitrarily used to unconstitutionally target and suppress religious groups that hold ideologies prison officials find contrary to their political left wing extremist agenda of mongrelization."  (*See, e.g.,* ECF No. 184-1 at PAGEID # 2655.)  The Court again notes that this example is ***not*** exhaustive.

considered security threats by the ODRC, including but not limited to the six-pointed star.  (*See* ECF Nos. 58, 59.)  And again, these requests are outside the scope of discovery as set forth by the Court's prior decision.  (ECF No. 160 at PAGEID # 2503.)

Beyond these deficiencies, the Court also finds that Plaintiffs' requests are either completely irrelevant or improperly drafted as vehicles for discovery, placing them outside the bounds of Rule 36.  *Cogent Sols. Grp., LLC*, 2013 WL 12121522, at *3.  As a final deficiency, several more of Defendants' requests are improperly served on Defendants Gobel, Gillum, Norris, Clark, and Dolan as the information sought is outside the scope of the Defendants' employment with the ODRC – or in the case of Defendant Dolan, who no longer works for the ODRC, beyond his personal knowledge.  To this end, the Court is satisfied with Defendants' attestations that they made reasonable efforts to respond to Plaintiffs' requests where appropriate.  (*See, e.g.,* ECF No. 184-5 at PAGEID ## 2798-2810 (Defendant Dolan's response that "he lacks knowledge and information sufficient to admit or deny [the requests] after making a reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny.").)  *See* Fed. R. Civ. P. 36(a)(4) ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.").

As a result, the Court finds that Plaintiffs have failed to demonstrate that Defendants' responses were insufficient.  *Snyder*, 2016 WL 339972, at *7 ("As the movant, Ms. Snyder bears the burden of demonstrating that Fleetwood's answers or objections were insufficient.").  Accordingly, the Second Motion to Compel (ECF No. 184) is **DENIED** as to Defendants Gobel, Gillum, Norris, Clark, and Dolan's responses to Plaintiffs' Request for Admissions.

### 4.    Defendant Clark's responses to Plaintiffs' interrogatories

Plaintiffs' next argument is that Defendant Clark provided "insufficient" responses to twenty-five interrogatories.  (ECF No. 184-1 at PAGEID ## 2677-2695.)  Generally speaking, the interrogatories at issue seek various definitions and statistical information, and seek information to challenge that certain literature has resulted in violence.  (*Id.*; *see also* ECF No. 184-5 at PAGEID ## 2817-2821.)  In response to these interrogatories, Defendant Clark provided a number of objections, but nevertheless provided answers where appropriate.  (*See* ECF No. ECF No. 184 at PAGEID ## 2824-2834.)

Upon review of Defendant Clark's responses and objections, the Court will not compel Defendant Clark to revisit any of the interrogatories.  Defendant Clark noted that he "is no longer employed by ODRC," and thus was limited to his memory for purposes of responding to the interrogatories.  (*Id.*)  That obstacle notwithstanding, Defendant Clark still appears to have made reasonable inquiries in an attempt to respond to the interrogatories, and repeatedly invoked Defendant Graves' testimony from the preliminary injunction hearing, specifically that he had seen "violence escalate, or potential violence escalate, from inmates having symbols such as swastikas." (*Id.*; *see also* ECF No. 58 at PAGEID # 1485.)  Beyond the responses Defendant Clark provided, the Court finds his objections to be well taken and will not compel him to respond to irrelevant Plaintiffs' Personal Belief Requests (including, for example, interrogatories which ask him to define certain words) and Plaintiffs' other interrogatories which only serve to harass Defendant Clark.  Accordingly, the Second Motion to Compel (ECF No. 184) is **DENIED** as to Defendant Clark's responses to Plaintiffs' Interrogatories.

### 5.    Defendants' responses to Plaintiffs' requests for the production of documents

Plaintiffs' final argument in the Second Motion to Compel is that Defendants provided "insufficient" responses to fifty-one (51) requests for the production of documents ("RFPs").

(ECF No. 184 at PAGEID ## 2695-2725.)  With limited exceptions, however, the Court finds

that Plaintiffs' RFPs exceed the bounds of permissible discovery, as Plaintiffs again submitted

impermissible Generalized Requests[6] and requests for information that is plainly protected by the

attorney-client privilege and/or the work product privileges.[7]

Beyond these facially impermissible requests, Plaintiffs also sought a litany of "statistical

data" regarding various racial and religious groups, to which Defendants responded that the

"ODRC maintains no such statistical records in its possession, custody or control."  (*See* ECF

No. 184-6 at PAGEID ## 2844-2848, 2851-2852 (Request Nos. 23, 26-27, 34-36, 38-39, 50-

55).)  To this end, Defendants cannot produce documents which do not exist.  *Tolliver v. Liberty*

*Mut. Fire Ins. Co.*, No. 2:06-CV-00904, 2008 WL 4951792, at *2 (S.D. Ohio Nov. 17, 2008) ("A

party cannot be compelled to produce documents which do not exist or which it does not possess

or control.") (collecting cases).  But even where such statistical data may exist, the Court agrees

with Defendants that inmates' personal information is confidential and it would be unduly

burdensome for Defendants to account for "every single inmate" over the relevant time period.

(*See* ECF No. 211 at PAGEID ## 3103-3107, 3110-3112 (Request Nos. 8-28, 43-44, 50, 52-55).)

The Court also notes that many of Plaintiffs' requests are simply irrelevant, as they seek

the production of statistical information regarding groups of people or religions which have not

been classified as STGs, including (in no particular order) Judaism, Black Hebrew Israelites, the

---

[6] For example, Plaintiffs sought "statistical data of percentage of White inmates vis-à-vis black
inmates who have 'refused lock' (check-in) in violation of rule 5120-9-06(C)(23) at RCI during
2015 to 2018 AD, as may be maintained under . . . ."  (*See, e.g.,* ECF No. 184-2 at PAGEID #
2703.)  The Court notes that this is **not** exhaustive of Plaintiffs' Generalized Requests.

[7] For example, Plaintiffs requested "communications from legal services to RCI religious
personnel regarding the removal of Christian Separatist Church Society (CSCS) religious
materials from the chapel between April 2015 and September 2015 AD."  (*See, e.g.,* ECF No.
184-2 at PAGEID # 2703.)  The Court again notes that this example is **not** exhaustive.

Nation of Islam, Protestantism, Catholicism, Moorish Science Temple of American, Muslims, Rastafarians, Spanish Catholics, the African Cultural Organization, the NAACP, white inmates, black inmates, minority inmates. (*See generally* ECF No. 184-6 at PAGEID ## 2695-2725.) Plaintiffs argue that such information is necessary to support thier RLUIPA claim, but the Court disagrees. Plaintiffs do not seek evidence of alternative means of satisfying Plaintiffs' request to practice Christian Separatism. They seek a complete accounting of "violence occurring at all level-3 institutions" in the State of Ohio and the conduct reports associated with such violence. Such requests are too far astray from the factual or legal issues in this case, and are again beyond the scope of discovery as set forth by the Court's prior decision. (ECF No. 160 at PAGEID # 2503.)

This is not to say, however, that all of Plaintiffs' RFPs are impermissible. Indeed, Defendants concede that six RFPS – specifically, Request Nos. 4-7, 37, and 45 – are relevant and seek information that may exist, and Defendants state over objections that they will produce the requested documents to the extent they exist and are not protected by either the attorney-client/work product privileges and/or the prison's confidential security protocols. (*See* ECF No. 184-6 at PAGEID ## 2839-2840, 2847, 2850.) It is unclear to the Court whether Defendants have produced any documents in response to these RFPs. Accordingly, for the sake of clarity, the Third Motion to Compel (ECF No. 216) is **GRANTED IN PART** as to Request Nos. 4-7, 37, and 45 of Plaintiffs' RFPs, and **DENIED IN PART** as to the remainder of Plaintiffs' RFPs.

Accordingly, having considered all of the discovery requests at issue, the Second Motion to Compel (ECF No. 184) is **GRANTED IN PART** and **DENIED IN PART** as to Defendants' responses to Plaintiffs' Request for Production of Documents.

**B.** **Third Motion to Compel (ECF No. 216)**

    **1.** **Defendant Graves' responses to Plaintiff Heid's interrogatories**

Plaintiffs' first argument in the Third Motion to Compel is that Defendant Graves provided "evasive" responses to twenty-three (23) interrogatories. (ECF No. 216 at PAGEID ## 3130-3149.) Generally speaking, the interrogatories at issue seek statistical information, legal opinions, explanations regarding the ODRC's view of certain symbols (including the swastika) and certain types of people, and explanations regarding the motivating factors of actions related to Plaintiffs' claims. (*Id.*; *see also* ECF No. 216-1.) In response to these interrogatories, Defendant Graves provided a number of objections, but nevertheless provided answers where appropriate. (*See* ECF No. 216-1.)

Upon review of all of Defendant Graves' responses and objections, the Court will not compel Defendant Graves to revisit any of the interrogatories. The Court is satisfied with his responses to nearly all of the interrogatories, and finds that although Defendant Graves was not responsive to Request Nos. 19-21, those requests are duplicative of Plaintiffs' cross-examination of Defendant Graves during the January 11, 2021 preliminary injunction hearing. Specifically, while Request Nos. 19-21 seek information regarding "the decision to ascribe Plaintiffs as an STG affiliate," Defendant Graves already provided extensive testimony, under oath, on these issues. (*See* ECF No. 58 at PAGEID ## 1470-1478.) During the preliminary injunction hearing, Defendant Graves explained the ODRC's protocol for identifying STG affiliates, and testified that Plaintiff Damron was identified as an STG affiliate following an interview, during which Plaintiff Damron "probably told [Defendant Graves] he did believe in separatism," and following a tattoo check which identified STG symbols. (*Id.* at PAGEID # 1475.) Defendant Graves also testified that Plaintiff Heid was identified as an STG affiliate because he "pretty much admitted . . . the same thing that [Plaintiff] Damron did," and because a tattoo check revealed STG

identifiers on his hand. (*Id.* at PAGEID # 1478.) Because Defendant Graves already has addressed both the protocol and motivations behind "the decision to ascribe Plaintiffs as an STG affiliate," the Court need not compel further responses to Request Nos. 19-21.

The parties also dispute the burden associated with responding to Request No. 16, which asks Defendant Graves to "[i]dentify any White adherents of the Hindu faith within ODRC between 2014-2018AD." (ECF No. 216 at PAGEID # 3141; ECF No. 218 at PAGEID ## 3377-3378; ECF No. 221 at PAGEID ## 3406-3407.) Upon review of the briefing, the Court finds that Defendant Graves has met his burden of demonstrating that responding to Request No. 16 would be unduly burdensome, as doing so would require Defendant Graves to "cull through hundreds of thousands of inmate records between 2014-2018 and not only determine who among more than 250,000 inmates self-identified as [Hindu], but also who among them also self-identified as being a member of a particular race." (ECF No. 218 at PAGEID # 3378.) This is an unreasonable demand of Defendant Graves and not proportional to the needs of this case, especially given the minimal (if any) benefit that would result.

Accordingly, the Third Motion to Compel (ECF No. 216) is **DENIED** as to Defendant Graves' responses to Plaintiff Heid's Interrogatories.

### 2. Defendant Dolan's responses to Plaintiff Heid's interrogatories

Plaintiffs also argue that Defendant Dolan provided "evasive" responses to twenty-two (22) interrogatories. (ECF No. 216 at PAGEID ## 3149-3164.) Generally speaking, the interrogatories at issue seek information related to various screening decisions and the security concerns and/or measures associated with various groups, including white separatists, and various symbols, including the swastika. (*Id.*) In response to these interrogatories, Defendant Dolan provided a number of objections, but nevertheless provided answers to the best of his memory. (*See* ECF No. 216-2.) As Defendant Dolan noted, however, he "is no longer employed

by ODRC" and accordingly was limited to his memory for purposes of responding. (*Id.*) The Court notes, however, that Defendant Dolan repeatedly responded that "he does recall that the Publication Screening Committee voted to exclude [the publications at issue in this lawsuit] because they were inflammatory, explicitly advocated for the use of violence to systemically and. persistently suppress doctrines with which they disagreed, were not conducive to rehabilitation, and were likely to lead to violence." (*Id.*) In the subject briefing, Plaintiffs repeatedly characterize Defendant Dolan's response as "a blatant lie and misrepresentation," and turn away from the discovery dispute to argue the merits of their claims. (*See* ECF No. 216 at PAGEID ## 3149-3164.) The merits of Plaintiffs' claims, however, are not at issue here, as the Court is instead tasked with determining whether Defendant Dolan's responses were sufficient. And here the Court finds that Defendant Dolan's responses were sufficient, even if Plaintiff may not like them. Accordingly, the Third Motion to Compel (ECF No. 216) is **DENIED** as to Defendant Dolan's responses to Plaintiff Heid's Interrogatories.

### 3. Defendant Williams' responses to Plaintiff Heid's interrogatories

Plaintiffs next argue that Defendant Williams provided "evasive" responses to sixteen (16) interrogatories. (ECF No. 216 at PAGEID ## 3164-3173.) Generally speaking, the interrogatories at issue seek information related to religious CDs, certain literature within the ODRC library network, the definitions of various terms, and ODRC protocol regarding swastikas. (*Id.*) Like the other Defendants, Defendant Williams asserted a number of objections, but nevertheless answered Plaintiff Heid's interrogatories to the extent she could. (*See* ECF No. 216-3.) To this end, the Court agrees that most of Plaintiff Heid's interrogatories were improperly submitted to Defendant Williams, as she correctly noted that she "is not an attorney or the Religious Services Administrator, nor is she the [Deputy Warden of Special Services] or the STG Coordinator," and therefore was not equipped to answer a majority of Plaintiff Heid's

interrogatories.  (*Id.*)  Because Defendant Williams served as the Deputy Warden of Special Services from 2011-2016, she was able to adequately respond to some of Plaintiffs' inquiries to the extent she had personal knowledge.  (*Id.*)

Beyond Defendant Williams' responses, the Court also finds her objections to be well taken and will not compel her to respond to irrelevant Personal Belief Requests (including, for example, interrogatories which ask her to define certain words) or Legal Conclusions Requests (including, for example, interrogatories which ask her to identify what constitutes "religious exercise" and/or the infringement of Constitutional rights) which serve no purpose other than to harass her.  Accordingly, the Third Motion to Compel (ECF No. 216) is **DENIED** as to Defendant Williams' responses to Plaintiff Heid's Interrogatories.

### 4. Defendants Norris and Gobel's responses to Plaintiff Heid's interrogatories

Plaintiffs next argue that Defendant Norris provided "evasive" and "completely irresponsive" answers to twenty-four (24) interrogatories, and that Defendant Gobel has "failed to provide any response" to twenty-five (25) interrogatories.  (ECF No. 216 at PAGEID ## 3173-3193.)  With regard to Defendant Gobel's interrogatories, Defendants concede that they cannot find evidence that they served Defendant Gobel's responses to Plaintiffs, and they state that "[u]ntil now [they] had not been apprised that Mr. Gobel's interrogatory responses had not been received by Plaintiffs."  (ECF No. 218 at PAGEID # 3388.)  Regardless, Defendants indicate that "in case Plaintiffs did not previously receive copies of Mr. Gobel's executed responses, [Defendants] will have them reissued."  (*Id.*)[8]

_____

[8] In their Reply brief, Plaintiffs take issue with Defendants' position that they "had not been apprised," and Plaintiffs correctly point to a meet and confer letter, dated June 16, 2021, in which Plaintiffs wrote that "[t]o date no responses were provided regarding Interrogatories sent to Defendant Gobel."  (ECF No. 221 at PAGEID # 3415 (citing ECF No. 216-6 at PAGEID # 3326).)  Plaintiffs also state that "[s]imply put, defense counsel is a liar and the Truth is not in her."  (ECF No. 221 at PAGEID # 3415.)  Plaintiffs already have been warned by the Court

Upon closer review of Defendant Norris' responses and objections, the Court believes that Defendant Norris only properly responded to Request Nos. 1-4, and that Defendant Norris' responses to Request Nos. 5-25 are instead responsive to the interrogatories directed to Defendant Gobel, as summarized below:

| Interrogatory to Defendant Norris: | Interrogatory to Defendant Gobel: | Defendant Norris' response: |
|---|---|---|
| Request No. 5: Identify any security concern between 2012-2018 AD caused to the ODRC by the Plaintiffs' individual use to the swastika. | Request No. 5: Describe why you found both words "Blood and Honor" and the symbols of lightning bolts was used in a White Supremacy context by Plaintiff Heid. | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 6: Identify any instance between 2012-present where Plaintiffs have used the swastika to violate any section of AR 5120-9-37 (B)(1-5). (Please note, this request is asking for an instance in which the Plaintiffs specifically used the swastika for one of those purposes; not the instance in which ODRC officials have assigned the Plaintiffs' use of the swastika to one of those purposes for simply using the swastika.). | Request No. 6: Describe why you found Plaintiff Heid's ethno-religious use of the swastika, the words "Blood and Honor," the Roman Salute, and the lightning bolts warranted a Rule 17 conviction. | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 7: Identify any security concern within ODRC between 2012-2018 AD caused by the use of library books which display the swastika. | Request No. 7: Describe why you did not believe Plaintiff Heid's use of the swastika, the words 'Blood and Honor,' the Roman Salute, and the lightning bolts were part of | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |

---

about their inflammatory language and unwarranted personal attacks. (*See* ECF No. 160 at PAGEID ## 2504-2505.) The Court therefore **CAUTIONS** Plaintiffs, for the last time, that future *ad hominem* attacks will not be tolerated, and may subject Plaintiffs to sanctions. *See* S.D. Ohio Civ. R. Introductory Statement on Civility ("An opposing litigant, a lawyer who represents that litigant, or a Judge who decides an issue has not thereby forfeited the right to be treated with common courtesy.").

| Interrogatory to Defendant Norris: | Interrogatory to Defendant Gobel: | Defendant Norris' response: |
|---|---|---|
| | his ethno-religious expressions. | |
| Request No. 8: Identify how long the books, as identified in Plaintiffs' exhibit-198, have been made available in the RCI main library. | Request No. 8: Describe any context within ODRC where a White person can use the swastika, the words "Blood and Honor," the Roman Salute, and the lightning bolts as part of their culture without being classified as an STG affiliate or part of an unauthorized group. | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 9: Identify any security concern within ODRC between 2012-2018 AD caused by Plaintiffs' use of "Mein Kampf: The Ford Translation." | Request No. 9: Describe a scenario within ODRC where an Aryan American person can use the swastika, the words "Blood and Honor," the Roman Salute, and the lightning bolts in an ethnic context without being classified as an STG affiliate or part of an unauthorized group. | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 10: Identify any Hispanic gangs profiled within ODRC. | Request No. 10: Describe a scenario within ODRC where an Aryan American person can use the swastika, the words "Blood and Honor," the Roman Salute, and the lightning bolts in a religious context without being classified as an STG affiliate or part of an unauthorized group. | Subject to the foregoing objections: In a prison, use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 11: Identify any Hispanic gangs profiled within ODRC that use the six pointed star in any context. | Request No. 11: Describe why the words "Blood and Honor" receive protection under ODRC policies when attached to the publication, "Blood and Honor" by W.E.B. Griffin (see Ex. -200), as found in RCI's library, but is characterized as participating in a "White | Subject to the foregoing objections: Although in a prison the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory, the book Blood and Honor written by W.E.B. Griffin does not glorify Hitler, Aryans, or the |

| Interrogatory to Defendant Norris: | Interrogatory to Defendant Gobel: | Defendant Norris' response: |
|---|---|---|
| | Supremacy" group when used by pro Aryan American publications. | Third Reich. Instead, it roundly vilifies them and ends in their inglorious humiliation and defeat. |
| Request No. 12: Identify if any members of the Hispanic Catholic sect use the six pointed star. | Request No. 12: Describe how an inmate's due process rights may be violated where they are denied a meaningful opportunity to present a defense [to a] charged conduct offense that has Constitutional implications, such as being punished for ethnic expressions. | Subject to the foregoing objections: At a hearing officer's discretion, a conduct report may be heard by the hearing officer or referred to the Rules Infraction Board. Moreover, if the conduct report is resolved by the hearing officer, the Rules Infraction Board Chairman will review the decision. |
| Request No. 13: Identify if any members of the Hispanic Catholic sect are gang profiled. | Request No. 13: Describe the opportunity afforded Plaintiff Heid to establish a defense to hearing of conduct report RCI-15-8328. | Subject to the foregoing objections: When a conduct report is heard by a hearing officer, the inmate is provided an opportunity to present his or her defense. Furthermore, if the conduct report is resolved by the hearing officer rather than being referred to the Rules Infraction Board, the rules Infraction Board Chairman will review the decision. |
| Request No. 14: Identify the person whose handwriting appears on the Truth Ministries, CSCS of Ohio's mailing list as on the Court record at Doc.68-3, Pg.ID: 1645-46. | Request No. 14: Describe why the drawing central to the issue of conduct report RCI-15-8328 was not withheld pursuant to AR 5120-9-19. | Subject to the foregoing objections: RC 5120-9-19 applies to publications. |
| Request No. 15: Describe how the prison STG policy can be Constitutional but unconstitutionally applied to an obscure religious sect. | Request No. 15: Describe why the withholding procedures of AR 5120-9-19 were not made available to Plaintiff Heid in the withholding of his hand drawn birthday card central to the issue of conduct report RCI-15-8328. | Subject to the foregoing objections: RC 5120-9-19 applies to publications. |

| Interrogatory to Defendant Norris: | Interrogatory to Defendant Gobel: | Defendant Norris' response: |
|---|---|---|
| Request No. 16: Identify any communications you were part of regarding Plaintiffs and the CS faith between 2012-2018 AD. | Request No. 16: Describe the rule violation(s) and/or permissibility of an inmate to make a drawing of the cover of a book which was permitted [by] the prison's screening provisions. | Subject to the foregoing objections: RC 5120-9-19 applies to publications. |
| Request No. 17: Identify any participation you took in removing the CS religious literature from the RCI chapel library in 2015 AD. | Request No. 17: Identify ODRC's position on conduct that appeals to Aryan Americans. | Subject to the foregoing objections: Defendant cannot formulate a response to such an unbounded hypothetical. |
| Request No. 18: Identify any participation you had in the removal of Plaintiffs' personal religious/political literature at issue in this lawsuit. | Request No. 18: Identify ODRC's position on content whose rhetoric emphasizes the positive aspects of National Socialist Germany. | Subject to the foregoing objections: Since in a prison the use of such things as the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory, there are no positive aspects of National Socialist Germany. |
| Request No. 19: Define what "white supremacy" means as used by ODRC. | Request No. 19: Describe if your decision to find Plaintiff Heid guilty of conduct report RCI-15-8328 was influenced by any political beliefs which oppose the existence of White national/government. | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 20: Define what "white separatism" means as used by ODRC. | Request No. 20: Describe if your decision to find Plaintiff Heid guilty of conduct report RCI-15-8328 was influenced by any religious beliefs that are in opposition to the Christian Separatist ("CS") faith. | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 21: Identify any exemptions to the ODRC's STG classifications of "White Supremacist" or "White | Request No. 21: Describe if your decision to find Plaintiff Heid guilty of conduct report RCI-15-8328 was influenced | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison |

| Interrogatory to Defendant Norris: | Interrogatory to Defendant Gobel: | Defendant Norris' response: |
|---|---|---|
| Separatist" that exist for members of Aryan ethnicity. | by any adverse beliefs about racial purity. | environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 22: In carrying out your job duties have you ever used personal religious/racial/political beliefs to suppress and/or oppress any aspect of the Aryan American ethnic group. | Request No. 22: Describe if your decision to find Plaintiff Heid guilty of conduct report RCI-15-8328 was influenced by any political beliefs which oppose the existence of the Theocratic Republic. | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 23: In carrying out your job duties have you ever used personal religious/racial/political beliefs to suppress and/or oppress any aspect of the Christian Separatist faith. | Request No. 23: Identify ODRC's position on Plaintiffs beliefs which promotes racial purity. | Subject to the foregoing objections: Although Plaintiff may believe whatever he chooses to believe, in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 24: Describe the ODRC's STG protocols when encountering Aryan Americans within ODRC. | Request No. 24: In carrying out your job duties have you ever used personal religious/racial/political beliefs to suppress and/or oppress any aspect of the religious teachings of the CS faith. | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |
| Request No. 25: Identify how the STG classifications are not overly broad when it comes to Aryan Americans under ODRC's custody | Request No. 25: In carrying out your job duties have you ever used personal religious/racial/political beliefs to suppress and/or oppress any aspect of Aryan American culture. | Subject to the foregoing objections: Not only are Defendant's personal beliefs irrelevant, but also in a prison environment, the use of the swastika, Roman salute, lightning bolts, and/or the words "blood and honor" are inherently inflammatory. |

(ECF No. 216 at PAGEID ## 3173-3193.)  Indeed, it appears to the Court that Defendant

Gobel's responses were inadvertently "copy and pasted" into Defendant Norris' responses.  As a

result, neither Defendant Norris nor Defendant Gobel has properly responded to Plaintiffs'

interrogatories.  Accordingly, the Third Motion to Compel (ECF No. 216) is **GRANTED** as to

Defendant Norris and Defendant Gobel's responses to Plaintiff Heid's Interrogatories.

     **5.**     **Defendant Graves' responses to Plaintiff Damron's interrogatories**

     Finally, Plaintiffs argue that Defendant Graves also has "failed to provide any response"

to twenty-five (25) interrogatories served by Plaintiff Damron.  (ECF No. 216 at PAGEID ##

3193-3205.)  In response, Defendants maintain that they served Defendant Graves' responses on

May 28, 2021, but state that "in case Plaintiffs did not previously receive copies of Mr. Graves'

executed responses, [Defendants' counsel] will have them reissued."  (ECF No. 218 at PAGEID

# 3388.)  It is unclear to the Court whether Defendants have forwarded Defendant Graves'

responses to Plaintiffs.  Accordingly, for the sake of clarity, the Third Motion to Compel (ECF

No. 216) is **GRANTED** as to Defendant Graves' responses to Plaintiff Damron's Interrogatories

to the extent he has not already re-served them.

**IV.**

     Accordingly, for the reasons set forth above, the Motion by Leave of Court to Compel

Defendants to Provide Adequate Responses to Discovery Request, ECF No. 184, is **GRANTED**

**IN PART** and **DENIED IN PART**.  Specifically, the Motion is **GRANTED** as to Request Nos.

4-7, 37, and 45 of Plaintiffs' requests for the production of documents to the extent responses

have not already been provided, and **DENIED IN PART** as to the remainder of Plaintiffs'

discovery requests.  Defendants are **DIRECTED** to respond to Request Nos. 4-7, 37, and 45 of

Plaintiffs' requests for the production of documents by **APRIL 30, 2022**.  Defendants shall serve

their response and shall file proof of service to the Court docket within **SEVEN (7) DAYS** of

27

service.

Additionally, the Motion by Leave of Court to Supplement Plaintiffs' Motion to Compel Defendants to Provide Adequate Responses to Discovery Request, ECF No. 216, also is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the Motion is **GRANTED** as to Defendant Norris' responses to Plaintiff Heid's Interrogatories, Defendant Gobel's responses to Plaintiff Heid's Interrogatories, and Defendant Graves' responses to Plaintiff Damron's Interrogatories, and it is **DENIED** as to the remaining interrogatories.  Defendants Norris, Gobel, and Graves are **DIRECTED** to respond to Plaintiffs' interrogatories by **APRIL 30, 2022**. Defendants Norris, Gobel, and Graves shall serve their responses and shall file proof of service to the Court docket within **SEVEN (7) DAYS** of service.

As noted in the Court's October 18, 2021, the discovery deadline in this case passed on July 1, 2021.  (ECF No. 209.)  Except for as set forth above, the Court finds no reason to extend the discovery deadline again.  Accordingly, the parties are **NOT** to engage in any new or additional discovery.  The Court will set a dispositive motion briefing schedule by separate order.

**IT IS SO ORDERED.**

Date: March 24, 2022                    */s/ Elizabeth A. Preston Deavers*
                                        **ELIZABETH A. PRESTON DEAVERS**
                                        **UNITED STATES MAGISTRATE JUDGE**

28